Complainants Dinah Schneider and Valentine, her husband, are creditors of the defendants Charles Schmidt and John Huber, their debt being founded on a decree of this court, obtained on October 4th, 1904, for the payment of $1,004, besides costs, all of which, with interest, is still due except $100, which was realized by sale under execution of the right of defendant debtor Schmidt in certain real estate. Under execution upon this decree, issued in the cause, on August 22d, 1911, levy was made by the sheriff on August 31st, 1911, upon a carousel or merry-go-around, with its engine, boiler, organ and other equipments in the possession and management of the defendant Emma Schmidt, wife of the judgment debtor, and then located at Hillside park, Newark, New Jersey.
Previous to the securing of the decree, and on November 4th, 1903, Charles Schmidt and John Huber had given a chattel mortgage to Mrs. Schmidt upon a carousel, with its engine, boiler and equipments, then located at Passaic wharf, Newark, New Jersey, to secure $1,500, with interest for one year. Complainants issued an execution on their decree under which a levy was made on November 2d, 1905, upon the mortgaged chattels, and in a suit afterwards brought in this court to set aside the mortgage as invalid and fraudulent, a decision was rendered sustaining the mortgage and advising a dismissal of the bill.
The present bill charges that in the year 1907, and after default in payment, Mrs. Schmidt took possession of the mortgaged chattels as mortgagee in possession, and has since continued *Page 83 
in possession thereof as such mortgagee. Complainants claim that the chattels of which she took possession under her mortgage are the same chattels as those upon which the levy under their said execution was made in August, 1911, and that Mrs. Schmidt since taking possession as such mortgagee has received the rents and profits of their use without accounting therefor, or applying the same to the redemption of her mortgage, and that such receipts over and above the expenses of operation and maintenance of the carousel have been more than sufficient to pay the entire amount due on the mortgage; that these receipts have not been so applied, but the mortgage has been kept alive and uncanceled, in order to impair complainants' lien under their execution. An account of the amount due is prayed, with an application of payments to the mortgage, and the sale of the carousel under complainants' execution free of the encumbrance.
In reference to the claim that Mrs. Schmidt took possession as mortgagee in 1907, the complainants' bill specially charges that by her petition filed in this suit after the levy on the execution in August, 1911, and to prevent an injunction against the sale thereunder, she set up an agreement of the mortgagors in 1907, to transfer to her all their right, title and interest in the chattels so that she might become owner, and that she took possession as owner, and has remained in possession thereof, and from time to time purchased new appliances to replace portions of the old carousel.
The defendant Mrs. Schmidt (who answers jointly with her husband) admits taking possession in 1907 of the chattels mortgaged to her, under an agreement with the mortgagors to transfer all their right and interest to her, so that she might become owner, and that she then took possession as owner and has since remained in possession, she herself conducting the business of running.
At the time of this taking possession, about February 14th, 1907, the goods, she claims, were sold at public auction for $650, their full value at that time; and after her acquiring the property in 1907, and before the levy, she had largely replaced the equipments of the carousel, so that at the time of the levy, in *Page 84 
August, 1911, the only portions of the original carousel left were the rim and a few small figures. The identity of the chattels included in the mortgage with the chattels levied on is denied.
Defendant, also, as an additional defence, claims that the complainants' delay, and their omission to proceed on their previous executions issued on the decree, allowing her to incur the expense and risk of maintaining and operating the carousel, amounted to an abandonment of a claim that there was any value in the mortgaged chattels beyond her mortgage, and complainants are now barred from any equitable relief by way of accounting.
Evidence was taken at the hearing bearing upon the question of the amount of rents, profits and income from the business since defendant took possession, and which would show apparently that the expenses for maintenance, repairs, new equipments, c., were largely paid out of the receipts of Mrs. Schmidt from the business, and that (if no allowance to her for her services in managing the business) the amount of profits she has made from the business is sufficient, and more than sufficient to pay her mortgage, if the complainants at the time of their levy were entitled to redeem the mortgage and have an accounting.
The primary question to be decided is the right of the complainants as creditors under the execution and levy set out in the bill, to any accounting against Mrs. Schmidt as mortgagee.
So far as relates to personal property, a judgment creditor's right to an accounting against a mortgagee depends not upon the judgment or decree alone, as in the case of real estate, but upon the lien obtained under the execution, which lien alone gives the creditor any right or standing for an accounting or other relief against the judgment debtors or those claiming under them. Dunham v. Cox (Court of Errors andAppeals, 1855), 10 N. J. Eq. (2 Stock.) 437, 467; Hall v. Nash(Court of Errors and Appeals, 1899), 58 N. J. Eq. (13 Dick.) 554.
This distinction as to the time when the judgment creditor's right attaches is important, and in the present case is vital. For the levy on personal property is a seizure of the judgment debtor's rights at thetime of the delivery of the execution to the sheriff, and the judgment debtor, therefore, stands in the *Page 85 
debtor's place, and the property levied on is subject to all valid transfers previously made, whether to mortgagees or others. A transfer of personal property previously made is subject to attack by an existing creditor claiming under a subsequent execution if the transfer of his equity was in effect substantially a gift of the debtor's property in fraud of creditors, or otherwise substantially a fraud.
But a mortgagor may release or convey the equity of redemption to the mortgagee, and although always subject to inquiry in a court of equity, the transfer, if fairly made, is binding upon the mortgagor and those claiming under him by rights in the property subsequently acquired. There is no question, I think, that upon the facts proved, the mortgaged chattels in their condition when taken over by the mortgagee in 1907, were not worth the amount then due upon the mortgage. The carousel and equipments were originally bought by Schmidt and Huber in 1899 for $2,300, $1,000 of which was secured by a chattel mortgage to the vendor. It had been in use since that time and was property of a character which rapidly deteriorated in value unless kept in repair and renewed. A dealer in these equipments who saw the carousel about the time of the transfer, and subsequently renewed or replaced a large portion of the equipment, fixes its value as not over $1,100 at that time. This is the most reliable evidence given as to the value. The amount then due on the chattel mortgage, $1,500 principal sum with over three years' interest at six per cent. from November, 1906, was over $1,800, and I am satisfied on the proof that the equity of redemption, if then conveyed to the mortgagee in satisfaction of the mortgage, would have been a sale or transfer, which could not have been questioned by the mortgagors, or those subsequently claiming under them as invalid on the ground that any property of the mortgagors was conveyed in fraud of creditors. Complainants as existing creditors under their decree obtained before the release of the equity would have the right to question such transfer by way of gift, even under their subsequent levy, standing in this respect in a different situation from a creditor who became such after the gift, and therefore could not question it unless made with actual fraudulent intent. Hagerman v. *Page 86 Buchanan (Court of Errors and Appeals, 1889),45 N. J. Eq. (18 Stew.) 292.
Complainants' right to redeem depends, therefore, on the decision of the question whether in 1907 a valid transfer of the equity in the property was made by the mortgagees to the mortgagors. The facts proved show that in the early part of 1907, and after default, proceedings took place which were intended to be a public sale under Mrs. Schmidt's chattel mortgage, conducted by her attorney, Edward Beers. An advertisement of the sale, signed by him, has been produced, dated on the 8th day of February, 1907, announcing the sale at No. 11 Lentz avenue, Newark, New Jersey, where the goods were then stored on February 14th, 1907, at ten o'clock A. M. No proof, however, has been made as to the posting or other notice of any advertisements, and the only proof relating to the sale is that of the defendants Mrs. Schmidt and Huber, who say substantially that there was a public sale at that place, at which the mortgaged chattels were then and there offered for sale at public auction, and that Mr. Huber made a bid of $600, followed by a bid of $650 made by Mrs. Schmidt for which the property was sold to her. No bill of sale or other writing appears to have been executed at this time, but, subsequently, Huber, by a bill of sale, dated April 4th, 1907, for the consideration stated, of $650, conveyed the mortgaged chattels to Mrs. Schmidt, with warranty. The original mortgage given by Schmidt Huber to Mrs. Schmidt, on property belonging to Schmidt Huber as partners in the merry-go-round business, bound Huber and Schmidt jointly for the whole amount of the mortgage. This point was decided in the suit to set aside the mortgage. This conveyance by Huber was made, as the proofs show, after the foreclosure sale in consideration of his being released from any further demands on the mortgage, and in order to transfer all rights in the property to Mrs. Schmidt. The bill of sale on its face conveyed the chattels, not merely Huber's interest in them. Mr. Schmidt did not join in this bill of sale, nor does he appear to have executed any writings as evidence of a transfer of his interest. Mrs. Schmidt, by virtue of this oral purchase at public sale, and of this bill of sale of Huber, took possession of the *Page 87 
property sold and recorded the bill of sale on April 18th, 1907, but did not cancel or satisfy the mortgage. This possession was taken by the consent both of her husband and Huber. From the time of taking possession, the possession has been to the knowledge, both of Huber and her husband, that of an absolute owner, and so far as relates to both Schmidt and Huber, the mortgagors, this was the character of the possession at the time of the levy on the execution under which complainants now seek to enforce a right of redemption. Complainants claim that the transfer by public sale has not been proved, inasmuch as it has not been shown that public notice was given, and was invalid because there was no written bill of sale or transfer. And it is also claimed that inasmuch as the mortgage was one from a husband to his wife, and therefore good only in equity (Garwood v. Garwood(Vice-Chancellor Reed, 1897), 56 N. J. Eq. (11 Dick.) 265), title to the equity of redemption could be transferred only by a bill to foreclose in equity. In my judgment, however, the substantial question is, whether, on all the facts in the case, a transfer of the equity of redemption in the mortgaged chattels valid in a court of equity, as against the mortgagees, or any creditors claiming under them by subsequent levy, has been made. And upon this question my conclusion upon the facts proved is, that such valid transfer was made, and has been perfected by a delivery to the mortgagee of the mortgaged chattels which, at the time of the delivery, were not worth the amount of the mortgaged debt. Huber understood that he was absolutely discharged from any further liability under the mortgage, and his evidence is not denied by Mrs. Schmidt. Whether, as against the husband, the mortgage is satisfied, is immaterial on this inquiry, for as he consented to the sale and transfer to Mrs. Schmidt, as the owner, the only right which the subsequent execution creditor has to attack the transfer is upon the ground of fraud, as being substantially a gift of the debtor's property, and a mere colorable transfer in fraud of his creditors. Title to personal property is fully transferred by delivery intended to transfer title, and the acquiescence of the mortgagors in the delivery and possession by the mortgagee, under the proceedings for public sale, followed by Huber's bill of sale, operated to transfer the legal title of the *Page 88 
mortgagors, and as to them and all persons standing in their place to foreclose the equity of redemption.
One partner has power by a bill of sale to convey the title to the personal property of the firm in payment of its debts. Boswell v.Green (Supreme Court, 1856), 25 N. J. Law (1 Dutch.) 390
(Mr. Justice Potts, at pp. 395, 396); 22 Am. Eng. Encycl. L. (2d ed.) 150. The addition of a seal to the bill of sale by one partner does not affect its validity, if the sale is consummated by delivery. Anderson v.Tompkins (Chief-Justice Marshall, 1820), 1 Brock. C. C. 456;1 Fed. Cas. No. 365; Everit v. Strong (1843), 5 Hill 163.
Complainants insist that in her petition for injunction against the sale under complainants' execution, Mrs. Schmidt who set up the foreclosure sale substantially admitted that after this sale she held possession partly as mortgagee, and this admission is relied on in connection with the other facts, as establishing the nature of her claim. On her whole petition, however, she puts her claim to the goods primarily on the ground of ownership, following the sale and the delivery, and it is only in case such claim fails that she claims to be mortgagee. The petition did not set up the sale from Huber, which, however, was proved at the hearing in this case, and the admissions in the petition being sworn to, while evidential, are not conclusive as to petitioner's title, and she is entitled on this application for redemption and account to set up and prove her title as owner under the bill of sale.
On the whole case proved, I conclude that as against the complainants' claiming under the levy, on the execution set out in their bill, the defendants are entitled to hold as owners all of the property levied on, including as well the property originally taken or covered by the mortgage, as the portions thereof replaced or renewed by the defendant, and that under such levy the complainants have no right to redeem. This conclusion renders it unnecessary to consider the other question raised in defence of the claim to redeem, viz., the identity of the goods levied on with the mortgaged chattels, and the effect of the renewal or additions to the carousel made by Mrs. Schmidt after taking possession, and the further question whether complainants' *Page 89 
right to any equitable relief has been barred by delay or laches.
A decree will be advised dismissing the bill, but in view of the fact that Mrs. Schmidt did in her petition for injunction set up a claim as mortgagee which complainants were justified in probing by the bill they have filed, no costs will be allowed.
 *Page 488