Cheshire,
June 1, 1938.

### J. H. FERGUSON COMPANY *v.* KEENE.

*Howard B. Lane* (by brief and orally), for the plaintiffs.

*Walker S. Kimball* and *John R. Goodnow* (*Mr. Goodnow* orally), for the defendant.

MARBLE, J. The construction of the pumping station and the laying of the sewer pipes were parts of the same general project, supervised by the same engineer. The two contracts contain many identical provisions. Each embodies extensive Federal regulations. Each constitutes the engineer an adjudicator, whose decisions in relation to the fulfillment of the contract shall be final, and each provides that the "order or sequence of execution and the general conduct of the work" shall be subject to his approval and direction. The various clauses of the contract, read together and in the light of the surrounding circumstances, evidence an intent to make the engineer's decision conclusive as to all matters left to his determination.

Before the execution of their contract the plaintiffs had become thoroughly familiar with the terms and conditions of that required of the Central company. They had examined the plans for the pumping station and had submitted a bid for its construction. They knew the nature of the underground work; they understood that the pumping station was to be situated at "the lowest point in the City of Keene," and realized that the place was likely to be flooded.

Having all this knowledge, they agreed to stand the loss occasioned by any interruption in the prosecution of their work and to suspend work whenever the engineer or the city deemed it necessary or advisable. How far the city, apart from the engineer, had power to suspend the work need not be considered. It was in fact suspended at the implied request of the engineer. In view of the latter's authority, independent action on the defendant's part was hardly to be expected.

The plaintiffs, according to their own evidence, had confidence in the engineer, and the inference is inescapable that they trusted to his ability and integrity to see that the pumping station was con-

structed with as little interruption to their own operations as possible. The object of the clauses relating to estimates, quality of materials, sequence of execution, and extension of time was to leave those matters to a person of expert knowledge who had the confidence of both parties. See *Eaglesham* v. *McMaster*, [1920] 2 K. B. 169, 175. No reason appears why the clause relating to suspension of work should not be included in the same category.

It is the general rule that where matters of this kind are left to the decision of an architect or engineer, his judgment is final if "fairly and honestly exercised." *Berry* v. *Harris*, 43 N. H. 376, 377, 378. See Wait, Engineering and Architectural Jurisprudence, *s.* 742, citing *Snell* v. *Brown*, 71 Ill. 133; Annotations, 54 A. L. R. 1255, 1262, and 110 A. L. R. 137, 141; *Wenzel &c. Co.* v. *District*, 18 Fed. Supp. 616, 620.

Concerning the decision of an architect or engineer to grant or withhold a certificate, Professor Williston has said: "If the architect or engineer arrived at his conclusion under a clear mistake as to material facts, relief seems proper; but where his knowledge of the facts of the case is adequate, though his judgment may be unreasonable, it is a total change of the terms of the contract for the court to permit the judgment of a jury to be substituted for that of the architect or engineer for which the contract provided. To allow recovery on the contract wherever a jury finds the architect or engineer has been unreasonable is doing nothing less than this." 2 Williston, Con., *s.* 797. See, also, *Mayer* v. *Company*, 130 Ore. 341, where the foregoing passage is quoted with approval.

This, however, is not the theory on which the case was submitted to the jury. The trial court's instruction on the subject was as follows: "The defendant had the undoubted right to suspend work for any reason whatsoever for a reasonable time. It did not have the right to suspend it for an unreasonable time."

It is true that the defendant failed to except to this instruction, but it did not thereby waive its right to insist on the exception to the denial of its motion for a directed verdict. *Howson* v. *Company*, 87 N. H. 200, 205. The special grounds on which this motion is based amount to the assertion that the plaintiffs cannot recover because they agreed to accept the opinion of the engineer as to the necessity or advisability of the suspension of work (no question of reasonableness being involved), and because they agreed to assume all loss incurred in consequence of such suspension. The motion called the attention of the court with sufficient explicitness to the

fundamental principle underlying the case. *Burke* v. *Railroad*, 82 N. H. 350, 362; *Cozzi* v. *Hooksett*, 84 N. H. 530, 537.

Since the suspension of the plaintiffs' work was due to the Central company's failure to lay the foundation for the pumping station on time, the essential inquiry relates to the engineer's conduct in respect to the work of that company.

The only witnesses who testified at the trial were Ralph E. Ferguson, a member of the plaintiff partnership, and George O. Sampson, the engineer. The former expressed the opinion that lack of men and proper equipment was the reason the Central company did not complete its contract sooner. The latter stated that while in his opinion there was a lack of adequate supervision on the part of the Central company, the most serious impediments to the work were the "conditions which they encountered in the excavation" and the "unusually severe winter weather." Because of the federal requirements a requisition for workmen had to be made upon the National Employment Agency "as far in advance as possible," and "skilled labor was difficult to secure."

The witness further testified that in the light of his knowledge at the time the various methods of excavation were adopted, each of these methods was a "reasonable means of getting this hole excavated"; that there was no way of telling definitely what the pressure of the earth against the sheeting would be; that the existence of a porous area could not have been determined by any borings; that the Central company worked "continuously on the job," faithfully and diligently, and "to the best of their ability," and that under the conditions that were found to exist, the order which he gave the plaintiffs to suspend work was, in his opinion, necessary and advisable.

He summarized the situation as follows: "The soil encountered was extremely difficult. The top was loam and river sand down to about ten feet, and a little below that they encountered blue clay. It was this blue clay which gave them the most trouble. It was an extremely difficult situation; the most difficult we ever encountered in our work." And again: "The conditions encountered were extremely difficult to excavate and the floods were unusual compared with any of the other jobs we have had."

As to the advisability of permitting the Central company to continue its contract, he stated that he thought "it was better they should" go on, that they "surely had had plenty of experience in that particular place and to take the work away" from them would,

in his opinion, "delay the work longer than it would to have them continue."

While the question of what constitutes a reasonable time is ordinarily an issue for the jury, that question, as applied to the suspension of the plaintiffs' contract, was not involved in the present case except as it entered into the determination of what was necessary and advisable in the judgment of the engineer.

There is no evidence that the engineer acted arbitrarily or capriciously or in bad faith. His decision was based upon the material facts, which he fully understood, and no grounds for impeaching that decision have been shown. The motion for a directed verdict should have been granted.

*Judgment for the defendant.*

All concurred.