Hillsborough
No. 80-193

AUTOMATED HOUSING CORPORATION

v.

FIRST EQUITY ASSOCIATES, INC. & a.

FIRST EQUITY ASSOCIATES, INC. & a.

v.

AUTOMATED HOUSING CORPORATION

March 11, 1981

*Reiser & Rosenberg,* of Boston, Massachusetts (*Murray P. Reiser* on the brief and orally), for the plaintiff.

*Winer, Lynch & Pillsbury,* of Nashua (*S. Robert Winer* on the brief and orally), for the defendant.

KING, J.  In this contract action, the plaintiff, Automated Housing Corporation, sought to recover the unpaid balance on a construction contract plus the value of certain "extras" performed by the plaintiff during the course of its performance. The defendant, First Equity Associates, Inc., filed a companion action against the plaintiff for.. damages, alleging that the plaintiff had materially breached the contract by failing to complete the job. The cases were heard by a Master (*Theodore Wadleigh,* Esq.), who found that the plaintiff was entitled to recover the balance due on the contract plus the value of the "extras," less the cost of completing the work called for by the contract. The master's report was approved by *Wyman,* J. The defendant's objection to the master's report was overruled by *Loughlin,* C.J. The defendant's motion to set aside the verdict was denied by *Randall,* J., who reserved and transferred all questions of law relating to the denial of the motion to this court. We affirm.

Both parties were engaged in the business of residential construction. On September 21, 1970, First Equity and Automated Housing entered into a building contract relative to the construction of an apartment complex known as Brook Village West Garden Apartments on a site in Westborough, Massachusetts. First Equity was the owner, developer, and general contractor; Automated Housing was the prefabricator and the subcontractor. The contract stated that First Equity would pay $165,000 to Automated Housing to construct building shells on five apartment building foundations furnished by First Equity. The building components that made up the shells of these units consisted of the exterior bearing walls, interior bearing walls, interior non-bearing partitions, and the structural floor and roof panels. These components were prefabricated at Automated Housing's factory in Salem, New Hampshire, shipped by trucks to the building site, and assembled on the prepared foundations. Automated Housing

hired subcontractors to assist it in constructing these shells. First Equity, as general contractor, hired other subcontractors such as masons, plumbers, carpenters and electricians to perform the construction of the buildings, and employed a supervisory foreman for the project.

Automated Housing began to perform the contract in September of 1970. On October 20, 1970, Automated Housing submitted a statement to First Equity outlining a schedule of payments, which set forth specific dollar amounts to be paid when certain portions of the work were completed on each building. The master found that this schedule of progress payments was agreed upon by the parties.

Through the entire job, First Equity held back payments from Automated Housing and did not pay according to the schedule of payments. The master determined that as of April 12, 1971, First Equity owed Automated Housing approximately $24,000 for work already performed under the contract and for "extras." Because First Equity refused to make timely payments, Automated Housing ceased work on or about April 12, 1971. At that time, the work of Automated Housing was substantially completed, the only work remaining being that which was to be done by two of its subcontractors. An agreement was then reached between First Equity and Automated Housing that the remaining work would be done by the two subcontractors hired by Automated Housing, and that they would be paid directly by First Equity.

In May, 1972, the plaintiff brought this action to recover the unpaid balance under the contract and the value of "extras." The master found that the plaintiff had substantially complied with its contract obligations and that the plaintiff was justified in stopping work because of the failure of the defendant to make payments according to the schedule of progress payments.

The defendant argues that the master failed to make a specific finding that the defendant materially breached the payment terms of the contract. The defendant asserts that this omission is significant because the plaintiff would not be entitled to the balance of the contract price if the defendant's breach were only partial. The defendant argues, therefore, that we should remand the case for a specific finding on this issue. We disagree.

At least where the master makes no contrary findings, this court may imply subsidiary findings necessary to support a master's general findings. *See Beaudoin v. Beaudoin*, 118 N.H. 325,

328, 386 A.2d 1261, 1263 (1978); *State v. McCarthy*, 117 N.H. 799, 801, 379 A.2d 1251, 1252 (1977). The master found that the plaintiff was justified when it walked off the job because the defendant had not made timely payments. This conclusion carries with it a finding that the defendant had materially breached the contract, because otherwise the plaintiff would not have been justified in failing to complete the work. Clearly, a subcontractor is justified in terminating its performance when a general contractor fails to make timely payments. *Page v. Northeast Combustion Serv., Inc.*, 113 N.H. 575, 578, 311 A.2d 119, 121 (1973).

■ The defendant next argues that the master's implied finding that the defendant materially breached the contract is against the evidence and against the weight of the evidence. We again disagree. This court has generally upheld the decision of the lower court against such challenges "unless [the decision] was made without evidence or the court abused its discretion." *Kierstead v. Betley Chevrolet-Buick, Inc.*, 118 N.H. 493, 496, 389 A.2d 429, 431 (1978). Where, as in the instant case, the trial court heard conflicting testimony as to whether the plaintiff was justified in ceasing performance, we would overrule the trial court's denial of the motion to set aside the verdict only when the evidence was so far in favor of the losing party as to "disclose mistake, partiality, or corruption on the part of the triers of the fact." *Underhill v. Baker*, 115 N.H. 469, 472, 343 A.2d 643, 646 (1975). Because the trier of facts conducts the trial and observes and evaluates the testimony of the witnesses, he is generally in a better position than this court to determine the facts. Findings of fact entered by a master are binding on this court if supported by credible evidence. *Duby v. Osgood*, 120 N.H. 356, 357, 415 A.2d 326, 326 (1980); *Ballou v. Ballou*, 118 N.H. 463, 465, 387 A.2d 1169, 1170 (1978). Accordingly, this court will not substitute its judgment for that of the trier of fact in this case.

■ Finally, we are unpersuaded by the defendant's argument that the case must be remanded because the findings of the master are inconsistent. The defendant asserts that because the master found that the defendant was entitled to retain the cost of completion, and that this included supervisory costs, it was error for the master not to award supervisory costs. The evidence of supervisory costs submitted by the defendant included costs not limited to supervision of the little work remaining under the contract. The

evidence included supervisory costs associated with the construction of buildings other than those to be constructed by Automated Housing, as well as with work on the contract buildings that was not to be done by Automated Housing. It was not the master's function to guess the amount of the actual supervisory costs. Because the defendant failed to establish the supervisory costs it incurred, the master was not compelled to include them in its award.

*Affirmed.*

All concurred.