Merrimack
No. 80-142

SUMMIT ELECTRIC, INC.

v.

PEPIN BROTHERS CONSTRUCTION, INC.

PEPIN BROTHERS CONSTRUCTION, INC.

v.

JOHN A. CLEMENTS, COMMISSIONER OF
PUBLIC WORKS AND HIGHWAYS

March 16, 1981

204

*Ransmeier & Spellman,* of Concord (*Lawrence S. Smith* orally), for Summit Electric, Inc.

*Perkins, Phillips & Waters,* of Concord (*Roger B. Phillips* orally), for Pepin Brothers Construction, Inc.

*Gregory H. Smith,* acting attorney general (*Edward L. Cross, Jr.,* attorney, orally), for the State.

DOUGLAS, J. These consolidated cases involve a dispute between the State, the general contractor, and the subcontractor over the terms of a construction contract. The disagreement centers around the work to be done under two divisions of the State's contract specifications: Division 10, entitled "Specialties," and Division 16, entitled "Electrical." The "Specialties" section of a construction contract is usually performed by the general contractor; the "Electrical" section is usually performed by the electrical subcontractor.

Before submitting a bid on a State contract to renovate the Pleasant View Home in Concord, Pepin Brothers Construction requested an oral interpretation of the contract specifications from the State's architect because both the "Specialties" section and the "Electrical" section referred to illuminated exit signs. The architect informed Pepin that the "Specialties" section called for the general contractor to repair the existing system and the "Electrical" section required the electrical subcontractor to install the new signs. Pepin never asked the architect to issue an addendum to the specifications. On September 24, 1976, Pepin entered into a contract with the State in which it agreed "to furnish and deliver all the materials and to do and perform all the work and labor" for the renovation.

Pepin later entered into a subcontract with Summit Electric, under which Summit agreed to do the work required by the "Electrical" division of the State contract specifications. At that time, the specifications referred to a remote annunciator system but did not include schematic wiring diagrams for installation of the system, and they did not contain narrative requiring the electrician to install illuminated exit signs.

After the renovation work had begun, Pepin and Summit began to disagree over two items of work: installation of the illuminated exit signs and installation of the remote annunciator system. Summit argued that it was not required to install the exit signs because Pepin was required to do so under the "Specialties" section, and that it was not required to install the wiring for the remote annunciator system because the specifications contained no schematic diagram. Summit agreed to install the exit signs, reserving its rights against Pepin, but refused to complete the annunciator system. Pepin hired another electrician to do this work.

After completion of all of the work, Summit brought suit against Pepin for money due under the contract and for the cost of installing the illuminated exit signs. Pepin counterclaimed for the cost of installing the remote annunciator system. It also brought suit against the State for the cost of the "extra work" in installing the exit signs and the annunciator system. The cases were consolidated for trial before the Master (*John C. Fairbanks*, Esq.) who recommended decisions against Pepin in both actions. The Superior Court (*Souter*, J.) approved the master's recommendations. Pepin appeals, arguing that the master's findings are inconsistent and

against the weight of the evidence. We uphold the findings of the master.

■ The standard of review in an appeal from a master's recommendation is that the findings and rulings will be upheld unless they are unsupported by the evidence or are erroneous as a matter of law. *Hynes v. Whitehouse*, 120 N.H. 417, 421, 415 A.2d 876, 878 (1980); *Brown v. Mary Hitchcock Memorial Hosp.*, 117 N.H. 739, 742, 378 A.2d 1138, 1140 (1977).

Pepin's first argument is that the master's findings and rulings are inconsistent as a matter of law because he gave contradictory interpretations to the same sections of a contract. That argument mistakenly assumes that there is only one contract at issue when, in fact, there are two: the agreement between Pepin and the State and the agreement between Pepin and Summit.

■ In order to interpret each of these two contracts, a court must determine the intention of the parties at the time they were made. *Erin Food Serv., Inc. v. 688 Props.*, 119 N.H. 232, 235, 401 A.2d 201, 203 (1979). A court must consider not only the written instrument but also the situation of the parties. *Thiem v. Thomas*, 119 N.H. 598, 602, 406 A.2d 115, 118 (1979). In this case, the situations of the parties at the time they entered into their agreements were different. For example, Pepin was aware of the State's interpretation of Division 16, but Summit was not. It, therefore, was not erroneous as a matter of law for the master to find that the two sets of parties intended Division 16 to mean different things in the different contracts, even though the language was the same.

Pepin next argues that the master's findings are against the weight of the evidence because he found Division 16 to be clear and unambiguous in Pepin's contract with the State and ambiguous and vague in Pepin's contract with Summit. That, however, is not what the master found. We will discuss the master's actual findings individually at the same time we discuss whether those findings are supported by the evidence.

■ In the contract between Pepin and the State, the master found that the provisions requiring installation of the illuminated exit light system were clear and unambiguous. To the extent that the contract called for the installation of an exit system, it is clear and unambiguous. In its written contract with the State, Pepin agreed to do all the work required by the contract. Even Pepin does not challenge the finding that the contract called for the

installation of an exit light system, but rather disputes whether it was the party to install it. According to the terms of its contract, Pepin is responsible to the State for all work specified in the contract regardless of which section called for the work. The master was correct in ruling that Pepin could not recover from the State any extra compensation for the installation of the illuminated light system because the work was required by the contract. *See* 13 AM. JUR. 2d *Building and Construction Contracts* § 19 (1964).

We turn now to the provision in the State's contract with Pepin calling for installation of a remote annunciator system. At the time Pepin and the State signed their agreement, the "Electrical" division referred to the system but did not include wiring diagrams for installing it. The master did not find that this provision was clear and unambiguous. Rather, he found that Pepin could not recover compensation for extra work even if the contract were vague because Pepin did not comply with the terms of its contract by either requesting clarification prior to bidding or requesting extra work orders from the State. We consider the latter finding first.

Section 42 of Pepin's contract with the State provides that ". . . no charge for any extra work or material will be allowed unless the same has been ordered in writing by the Engineer. . . ." That provision is valid and binding. *See Leavitt v. Dover,* 67 N.H. 94, 96, 32 A. 156, 157 (1891). Although such a provision may be waived or modified by the parties, *Ecko Enterprises, Inc. v. Remi Fortin Constr., Inc.,* 118 N.H. 37, 41, 382 A.2d 368, 371 (1978), there is no evidence of waiver in this case. There is evidence that Pepin discussed the situation with the State engineer before it told Summit to install the system, but the record indicates that the State did not consider it extra work. There is no evidence that Pepin informed the State that it intended to charge for extra work before it filed suit. The record supports the master's finding that Pepin was barred by section 42 of the contract from seeking compensation from the State for work for which no extra work order had been issued. We need not discuss, therefore, the correctness of the master's finding that a general contractor must resolve any contract ambiguities prior to bidding.

Next, we consider Pepin's subcontract with Summit. The master found that Pepin was required to compensate Summit for the installation of the exit light system because Pepin's failure to inform Summit of the State's interpretation of the "Electrical" section misled Summit as to the scope of the work to be performed.

On this point, Pepin first argues that such a finding is inconsistent with the finding that Pepin's contract with the State clearly and unambiguously called for the installation of the exit light system. We disagree. The fact that the contract clearly required work to be done does not mean that it clearly required one party to do it. As Pepin readily admits, when it first read the specifications it knew that the contracts called for installation of the system; it was uncertain only as to whether installation of the system was to be performed by the contractor under the "Specialties" division or by the subcontractor under the "Electrical" division.

■■ Pepin further argues that the master erred in finding that it had a duty to inform Summit of the State's interpretation of the contract. We hold that Pepin did have such a duty. "[E]quity imposes a duty to speak when one knows or ought to know that his silence is misleading and will induce another to act upon it to his damage." *Decatur v. Cooper*, 85 N.H. 250, 257, 157 A. 706, 710 (1931). In this case, the evidence supports the master's finding that Pepin knew or should have known that a bidder would be misled by the language of the specifications. Pepin, an experienced contractor, was confused enough to request the State's architect for clarification of the work required by the "Specialties" and "Electrical" divisions. When Summit's bid on the work came in about one-fourth lower than the next lowest bidder, Pepin should have been alerted to the fact that the subcontractor might have been misled by the conflicting language. That knowledge imposed upon Pepin the obligation to speak.

■ Although the master made no specific findings as to the contract provisions for installation of the remote annunciator system, the fact that he did not hold Summit liable for the cost indicates that he found that the contract did not require the subcontractor to install it. That finding is supported by the fact that, at the time Summit agreed to do the work, the specifications referred only to surface-mounted boxes with pilot lights and name plates and did not include any wiring diagrams. The diagrams were supplied only after Summit questioned whether it was to do the wiring. We do not find the master's determination to be inconsistent with the finding that Pepin could not recover the cost of installation from the State because it had not requested extra work orders as required by its contract.

The master's findings are supported by the evidence and not erroneous as a matter of law.

*Affirmed.*

All concurred.