Hillsborough
No. 80-300

## D. M. HOLDEN, INC.

v.

## CONTRACTOR'S CRANE SERVICE, INC. & a.

October 1, 1981

*Prunier, Mazerolle & Frasca*, of Nashua (*Jeffrey H. Mazerolle* on the brief and orally), for the plaintiff.

*Sulloway, Hollis & Soden*, of Concord (*Warren C. Nighswander* on the brief and orally), for the defendant.

KING, C.J. The defendant, Contractor's Crane Service, Inc., appeals from a judgment in the amount of $16,324 in favor of the plaintiff and from a judgment of $4,201.51 on the defendant's counterclaim. Finding no error, we affirm.

On November 2, 1977, Contractor's Crane Service, Inc. (Crane Service) entered into an agreement with the City of Nashua in which it agreed to be the general contractor for the construction of the Nashua Municipal Parking Garage. Five days later, Crane Service and the plaintiff, D. M. Holden, Inc. (Holden), entered into a subcontract in which Holden agreed to perform specific functions designated in the contract between Crane Service and the City of Nashua such as: (1) site demolition and preparation; (2) excavating, filling, and grading; (3) sanitary sewerage system; (4) storm drainage; and (5) sub-base for asphalt paving.

The subcontract provided that Crane Service would pay Holden a total of $57,000 in monthly installments based upon a percentage of completion formula for performance of this work. By the terms of the agreement, Holden was to submit requisitions for payment to Crane Service, which in turn would present them to an architect

for the City of Nashua for his approval. Crane Service would then present to the City of Nashua requisitions in the amount certified by the architect. Crane Service was not liable to Holden until Crane Service received payment from the City of Nashua.

Holden began performance under the subcontract in November of 1977. On November 25, 1977, Holden submitted a requisition in the amount of $14,850 due for work completed by that date. Crane Service paid this amount on December 27, 1977. Holden submitted its second requisition on December 24, 1977, for work performed from November 26, 1977, to December 24, 1977. Crane Service paid the invoice amount of $15,120 on January 31, 1978. On January 6, 1978, Holden submitted its third requisition in the amount of $5,220 for work performed through that date. Crane Service initially delayed payment of this amount, but, following threats by Holden to quit the job site, paid this amount on April 17, 1978.

During the period between March 31, 1978, and May 31, 1978, Holden submitted a series of requisitions to Crane Service. By June 1, 1978, Holden had submitted requisitions totalling $55,929, and Crane Service had paid the sum of $35,190, leaving a claimed balance of $20,739.50.

On June 10, 1978, Holden walked off the job and refused to perform further work under the subcontract. Holden then instituted an action against Crane Service in which it sought $20,739.50 on the ground that Crane Service's failure to make payment on the amounts requisitioned constituted a breach of contract. Crane Service contended that, based upon the architect's computation of the percentage of the work completed, Holden had been overpaid and was not entitled to additional payments at the time it abandoned the job and that Holden's abandonment of the job constituted a breach of the contract. In addition to claiming $17,650 as the cost of completing Holden's work under the contract, Crane Service counterclaimed for $4,360 in damages resulting from Holden's failure to properly perform certain work, and $6,886 resulting from miscellaneous damage caused by Holden.

After a hearing, the Master (*E. Donald Dufresne*, Esq.) found that Holden was justified in leaving the job site and discontinuing performance of the work because Crane Service failed to make progress payments that were due. *See Automated Housing Corp. v. First Equity Associates, Inc.*, 121 N.H. 177, 180, 428 A.2d 886, 888 (1981). The master also found that Holden was entitled to be paid the contract price less the reasonable cost of completion. The master determined that the cost of completion was $6,500 and that Holden was entitled to be paid $50,500 on the contract. In addition, the master awarded Holden $1,014 for extras, for a total amount of

$51,514. Because Holden had received $35,190 in progress payments, the master awarded $16,324 to Holden.

On Crane Service's counterclaim for the cost of soil testing, repairs, and the replacement of granite curbing, light poles, and fixtures damaged by Holden, the master found for Crane Service and determined that the aggregate value of these counterclaims amounted to $4,201.51. The master deducted this amount from Holden's judgment, leaving a net balance payable to Holden of $12,122.49. Crane Service then appealed from the decree of the Superior Court (*DiClerico*, J.) approving the master's recommendations.

■ The findings and rulings of a master will be upheld unless they are unsupported by the evidence or are erroneous as a matter of law. *Summit Electric, Inc. v. Pepin Brothers Const., Inc.*, 121 N.H. 203, 206, 427 A.2d 505, 507 (1981). With this narrow standard of review in mind, we proceed to examine Crane Service's assignments of error.

■ Crane Service contends that it did not breach the contract by withholding payments from Holden. It argues that, according to the specific terms of the contract, no money was due Holden until its requisitions had been approved by the architect and payment received by Crane Service from the City of Nashua. Because Holden's requisitions had not been approved by the architect, Crane Service asserts that Holden was not entitled to payment. We disagree.

Although the validity of contract provisions conditioning a subcontractor's right to payment upon the approval of the subcontractor's work by an architect has been upheld, *Smith v. B, C & M Railroad*, 36 N.H. 458, 487 (1858); *see Francoeur v. State*, 102 N.H. 339, 341, 157 A.2d 49, 51–52 (1959); *Ferguson Co. v. Keene*, 89 N.H. 410, 414, 200 A. 396, 398 (1938), the master based his determination that Crane Service had breached the contract with Holden on his finding that Crane Service failed to properly seek the architect's approval.

The master found that, although the parties had entered into a finely drafted contract, the parties disregarded its provisions during the progress of the project. The parties never followed a mutually agreed-upon schedule of payments which differed from what the contract required, and Holden did not submit requisitions in accordance with such schedule of values. Instead, Holden submitted generalized requisitions to Crane Service which adjusted them to a schedule that it developed. Crane Service then presented these

requisitions to the architect for his approval and then to the City of Nashua for payment. When Crane Service received payment, it would then pay Holden. As a result, the approval and payment of Holden's requisitions was ultimately dependent upon Crane Service. The master specifically found that Crane Service failed to submit or to properly present Holden's requisitions to the City of Nashua and this resulted in Holden's not being paid. Under Article X(22) of the agreement, the subcontractor was entitled to be paid even though the architect had not approved the requisition, if the architect's failure to approve was the fault of Crane Service.

Crane Service further argues that it was error for the master to award Holden compensation for "extras" that it performed because the claimed "extras" were actually required under the subcontract and because the general contract, which is applicable to the subcontract, provides that no payment for "extras" would be made unless the work was approved in advance and in writing. We disagree.

██ Although the terms of the contract are clear, the master nevertheless awarded compensation for these "extras." Consequently we assume that the master found that the requirement for written approval was waived. The written terms of a contract may be waived orally or by implication. 13 AM. JUR. 2d *Building and Construction Contracts* § 24, at 27 (1964). This is also consistent with the master's conclusion that the written provisions of the contract had been "disregarded by the parties."

█ Finally, Crane Service contends that the master improperly reduced the amount of its counterclaims. We disagree. The master heard testimony regarding certain costs allegedly incurred by Crane Service to repair claimed defects in workmanship and determined that these costs were properly borne by Crane Service. The master also heard conflicting evidence concerning the cost of repairing a broken sewer line and adopted the estimate of Holden. The master also heard testimony regarding the cost to replace damaged or missing granite curbing, found that 181 feet had been damaged by Holden and awarded damages based on that figure.

We have carefully reviewed the record and conclude that each of the master's findings was supported by the evidence. *Automated Housing Corp. v. First Equity Associates, Inc.*, 121 N.H. 177, 180, 428 A.2d 886, 888 (1981); *Duby v. Osgood*, 120 N.H. 356, 357, 415 A.2d 326, 326 (1980). Accordingly, the decision below is affirmed.

*Affirmed.*

DOUGLAS and BATCHELDER, JJ., did not sit; the others concurred.