H.E. Contracting v. Franklin Pierce CV-04-484-PB  03/17/05  P

**UNITED STATES DISTRICT COURT FOR THE**
**DISTRICT OF NEW HAMPSHIRE**


<u>H.E. Contracting</u>

   v.                                      Civil No. 04-484-PB
                                   Opinion No. 2005 DNH 047

<u>Franklin Pierce College</u>


<u>**ORDER**</u>


H.E. Contracting (Plaintiff or "HEC") filed a complaint against Franklin Pierce College (Defendant or "FPC") on December 21, 2004 asserting claims based on, <u>inter</u> <u>alia</u>, breach of contract and quantum meruit (document no. 1).  HEC concurrently filed a Petition for Ex Parte Attachment to Secure Mechanic's Lien (document no. 4).  The Court granted HEC permission to attach certain real estate held by the Defendant in the amount of $600,000.00 on December 23, 2004 (document no. 5).

Before the Court for consideration is the Defendant's objection to Plaintiff's petition for ex parte attachment and to this Court's order of December 23, 2004 (document no. 13).  The Court held a hearing on the objection on February 4, 2005 and March 7, 2005.  For the reasons set forth below, the Court finds that the amount of Plaintiff's attachment should be reduced from $600,000.00 to $146,360.42.

## Standard of Review

Pre-judgment attachments are available to secure satisfaction of judgments "under the circumstances and in the manner provided by the law of the state where the district court is held." Fed. R. Civ. P. 64. Under New Hampshire law, a mechanic's lien is a statutory right that arises automatically upon the provision of labor or materials. See N.H. Rev. Stat. Ann. ("RSA") Chapter 447:2.[1] The lien provides security against the property owner for the value of the labor or materials rendered. Pine Gravel, Inc. v. Cianchette, 514 A.2d 1282, 1285 (N.H. 1986).

Under the statute, a labor and materials lien continues for 120 days after the services are performed or the materials are furnished. RSA 447:9. The lien may be secured by attachment of the property upon which it exists at any time while the lien

---

[1]RSA 447:2 provides in relevant part that:

If any person shall, by himself or others, perform labor or furnish materials to the amount of $15 or more for erecting or repairing a house or other building or appurtenances, . . ., by virtue of a contract with the owner thereof, he shall have a lien on any material so furnished and on said structure, and on any right of the owner to the lot of land on which it stands.

(emphasis added).

continues. RSA 447:10. The lien holds a favorable priority position with respect to other creditors in that it takes precedence over all prior claims except tax liens. RSA 447:9.

RSA 511-A, which governs procedures for pre-judgment attachments, applies to proceedings to secure liens under RSA 447. Chagnon Lumber Co., Inc. v. Stone Mill Constr. Corp., 474 A.2d 588, 589 (N.H. 1984). "RSA chapter 511-A was enacted in 1973 to conform the law of this State to standards of due process." Id.

RSA 511-A generally requires notice and an opportunity to be heard before a pre-judgment attachment is made. See RSA 511-A:1 and A:2. Under RSA 511-A:8, however, courts may grant certain attachments without prior notice to the defendant "if the plaintiff establishes probable cause to the satisfaction of the court of his basic right to recovery and the amount thereof." A specific exemption from the prior notice requirement is provided in cases where the plaintiff seeks to perfect a labor and materials lien under RSA 447. See RSA 511-A:8(III); see also Chagnon Lumber, 474 A.2d at 589. After an ex parte attachment is granted, the defendant is given notice and is entitled to a prompt hearing upon request. See RSA 511-A:8.

3

In Judge Manias' convincing and well-written opinion in Consolidated Elec. Distrib., Inc. v. SES Concord Co., No. 89-C-571/579 (Merrimack Superior Ct., Nov. 21, 1989) (copy attached to Plaintiff's Reply to Defendant's Objection as Exhibit 1), the court held that the provisions of RSA 511-A:3, which require a plaintiff to demonstrate a likelihood of success on the merits to obtain an attachment, and permit a defendant to avoid an attachment by establishing that its assets are sufficient to satisfy a judgment, do not apply in a proceeding on a mechanic's lien under RSA 447. The court found that applying RSA 511-A:3 to mechanic's lien proceedings "would frustrate the underlying purpose and design of the mechanics lien statute" in that it could cause a plaintiff to lose its statutory entitlement to an attachment and priority status in bankruptcy. Id. at 5-8. Accordingly, notwithstanding Defendant's argument to the contrary, I find that the provisions of RSA 511-A:3 do not apply to the determination of whether the ex parte attachment granted to the Plaintiff in this case was appropriate.

According to the court in Consolidated Elec., the content and focus of a post-attachment hearing on a mechanic's lien is whether the plaintiff has met its burden under RSA 511-A:8, which

4

defendant may rebut. Id. at 6. The defendant may challenge the plaintiff's basic right to recovery under RSA 447, the lien amount, or notice provisions. Id.; see also West Side Dev. Group, LLC v. D'Amour, No. 04-C-018, (Carroll County Superior Ct., March 24, 2004) (copy attached to Plaintiff's Reply to Defendant's Objection as Exhibit 2) (finding that the provisions of RSA 511-A:3 specifying the "reasonable likelihood of success test" and the "sufficiency of assets test" do not apply to a mechanic's lien proceeding under RSA 477). The Court applies the standard of review employed in Consolidated Elec. in considering the Defendant's objection to Plaintiff's ex parte attachment.

## Background

In April 2004, the Defendant invited Eric Lenardson, President of HEC, to bid on work related to the construction of athletic fields and associated facilities on land held by FPC. Plaintiff's initial bid for the entire project amounted to between $3,700,000 and $4,160,000 depending upon various options that could be chosen by FPC.

After reviewing the bids that it received, FPC determined that all of the bids exceeded its budget. FPC requested that certain contractors, including the Plaintiff, submit separate

5

bids for portions of the project including the site work, artificial turf installations, site lighting, and the construction of press-boxes and dugouts. Plaintiff made a new proposal for "the clearing and grubbing of project site to prepare for design/build soccer field and baseball field." Pl.'s Ex. 10.[2] Plaintiff stated that its price to provide "base work, drainage and artificial turf (E-turf) was $1,189,000." Id. Plaintiff stated that its price "for Base work only" was $625,000. Id.

Defendant awarded Plaintiff a site work contract in May 2004 for which the parties agreed that Plaintiff would be paid $625,000. Pl.'s Ex. 11. Defendant paid Plaintiff $375,000, or sixty percent of the contract price, in advance. Id. Defendant issued a purchase order to HEC in connection with the $375,000 payment dated June 7, 2004 that stated that the payment was for "construction contract to provide all site work, as per contract to follow." Id. Although Plaintiff began working at the project site on June 2, 2004, the contract between the parties is dated June 9, 2004. Pl.'s Ex. 6.

---

[2]Citations to exhibits refer to the exhibits introduced during the post-attachment hearing unless otherwise noted.

6

In late July 2004, Plaintiff submitted nine change orders.[3] Defendant requested that Plaintiff provide documentation to support those change orders. Plaintiff next submitted a requisition dated August 16, 2004, asserting that it had completed ninety percent of its work under the contract and was entitled to an additional payment of $187,500.00. Df.'s Ex. D. Defendant rejected the requisition.

At a meeting held on August 25, 2004 to discuss Plaintiff's change orders, Defendant approved Plaintiff's change orders numbered 4-6. Defendant rejected change orders numbered 1, 2, 3, 7, 8 and 9 contending that they covered work that was included within the Plaintiff's scope of work under the contract. The amount of the outstanding unpaid change orders is $409,359.50.[4] Plaintiff pulled its people and equipment off the site later that same day. Plaintiff subsequently commenced this lawsuit.

---

[3]A change order is a charge for work not included in a contract's scope of work.

[4]Plaintiff alleges in its complaint that it is owed payment on change orders numbered 1, 2, 7, 8 and 9; Plaintiff did not plead any facts pertaining to change order number 3. See Compl., ¶¶ 29-33. In construction team meeting minutes dated August 25, 2004, Jeffrey M. Kevan, a Senior Project Manager at the engineering firm T.F. Moran, and Defendant's project engineer on the site, wrote that Plaintiff verbally withdrew change order 3 at the meeting. See Df.'s Ex. G.

7

## Discussion

### A.   Percentage of Work HEC Completed

Eric Lenardson testified, and presented exhibits, supporting Plaintiff's allegation that it had completed ninety percent of its work under the contract at the time Plaintiff walked off the job.  In contrast, Jeffrey Kevan testified that based on his assessment HEC completed only sixty percent of the work within its contractually-defined scope of work.  For purposes of determining whether Plaintiff has demonstrated its basic right to recovery under RSA 447:2, the Court accepts the Plaintiff's evidence as sufficient to meet its burden under RSA 511-A:8.

### B.   Contract Accounting

Accepting the Plaintiff's allegation that it completed ninety percent of its work under the $625,000.00 contract, the Court finds that Plaintiff furnished labor and materials to Defendant worth $562,500.00.  Since the Defendant paid Plaintiff $375,000.00 in advance, the balance owed on the contract at the time Plaintiff left the job was $187,000.00.  On August 19, 2004, however, the parties executed a First Supplemental Agreement under which Plaintiff agreed that Defendant would make a direct payments to W.J. Graves, a stone contractor, of $77,069.58 for a

8

pending invoice, and $85,000 for an anticipated future invoice. See Df.'s Ex. F. Plaintiff agreed that Defendant's payments to W.J. Graves would reduce Defendant's obligation to Plaintiff under the parties' contract. While Defendant paid the invoice for $77,069.58, the evidence showed that Defendant only paid $15,596.79 of the anticipated payment of $85,000.00. Therefore, taking into account the total of Defendant's direct payments to W.J. Graves, the adjusted balance owed to Plaintiff on the contract is $94,360.42.

C. Applicable Scope of Work

The Plaintiff asserted at the hearing that Plaintiff's scope of work under the contract is defined in Eric Lenardson's letter proposal dated May 6, 2004. See Pl.'s Ex. 10. Lenardson cited his use of the phrase "Base work only," in the May 6th letter, although that phrase is neither defined in the letter, nor in any other document in evidence. Plaintiff argued that he only used the site plans and the scope of work defined in the June 9th agreement for reference. Defendant argues that the June 9th agreement defines Plaintiff's scope of work on the project, and alleges that Plaintiff executed a copy of the June 9th agreement showing his consent to its terms.

9

The Court finds that the Plaintiff admitted in its complaint that the applicable contract between the parties is the June 9th agreement. Plaintiff clearly and unequivocally alleged the following facts with regard to the parties' contract:

> On June 9, 2004, the parties entered into a contract covering HEC's work on the project. Pursuant to the Contract and agreements between the parties, HEC's scope of work included design of field subdrains, demolition, erosion control, clearing and grubbing, earthwork, storm drainage, field base materials, pavement and gravel subbase, loam and seed, and curbing primarily within the limits of each athletic field.

Compl., ¶ 14. Plaintiff did not reference any other contract in its complaint. While the evidence that Defendant presented at the hearing was insufficient to demonstrate that Eric Lenardson signed the June 9th agreement, the Court finds that the allegations in Plaintiff's complaint constitute a binding judicial admission. See Schott Motorcycle Supply, Inc. v. Am. Honda Motor Co., 976 F.2d 58, 61 (1st Cir. 1992) ("A party's assertion of fact in a pleading is a judicial admission by which it normally is bound throughout the course of the proceeding.") (citation omitted); see also Electric Mobility Corp. v. Bourns Sensors/Controls, Inc., 87 F. Supp. 2d 394, 405 (D.N.J. 2000) ("even if the post-pleading evidence conflicts with the evidence in the pleadings, admissions in the pleadings are binding on the

10

parties and may support summary judgment against the party making such admissions.") (citation omitted).

D.   Failure to Substantiate Change Order Requests

The Court finds from the evidence presented at the hearing that Plaintiff's proof was inadequate to show that the work described in change orders numbered 2 and 8 pertained to work outside of the scope of work agreed upon in the parties' contract.[5]  The June 9th agreement defined Plaintiff's scope of

---

[5]In change order number 2, Plaintiff requests $163,986.00 for the following work:

> 1. Additional work removed from the original quote which includes: clearing of trees beyond the field limits, grubbing, installation of additional silt fence, installation of boundary fence (provided by FPC), excavation of loam & sub grade material, laser grading, redistribute material for cut / fill situation, compaction of subgrade material, reshaping of grades (add 3 days [to] contract)

> 2. Additional 38,000 sqft around baseball field, 8900 cuft of material, accommodate electrical, fencing, sewer, water, and additional walk way up to the upper field, press box, bleacher pads and access to these areas for equipment and trucks as well as lighting.

Pl.'s Ex. 15.

In change order number 8, Plaintiff requests $85,500.00 for the following work:

> 1. Supply and install an additional 10' around the soccer field limits of 225'x360'.  Installation to include base material, drainage material, equipment,

11

work in Article I and incorporated by reference a site plan that shows the limits of clearing applicable to Plaintiff's scope of work. See Df.'s Ex. B. The limits of clearing depicted on the site plan clearly extend well beyond the area designed for the playing field surfaces and appear to encompass the work that Plaintiff contends required additional compensation. In addition, Plaintiff admitted at the hearing that it never produced supporting documentation for change order number 7.[6] The Court finds that Plaintiff did not establish its basic right to recovery on change orders number 2, 7 and 8 at the hearing, and therefore is not entitled to an attachment for that work.

E.   Authorization for Change Orders

Prior authorization provisions in the June 9th agreement provide another barrier to Plaintiff's recovery on its change orders because the contract expressly requires that the Plaintiff

---

manpower, and laser grading. Id.

[6]In change order number 7, Plaintiff requests $107,873.50 for the following work:

1. Increase in man hours to meet schedule date for completion. HEC has increased man hours from a 50 hour work week to a 84 hour work week to meet schedule request of Franklin Pierce College.

Pl.'s Ex. 15.

obtain written authorization from the Owner/Engineer for extra or changed work. Paragraph 12 of the June 9th agreement provides that: "No claim for extra work or cost shall be allowed unless the same was done in pursuance of the written order of the Engineer, approved by the owner." Paragraph 7 provides that: "No changes in the work covered by the approved contract documents shall be made without having prior written approval of the owner."[7] Contract provisions requiring that change orders be in writing have been upheld by New Hampshire courts unless the owner has actual knowledge of the additional work and is not prejudiced by the contractor's failure to comply with the writing requirement. See D. M. Holden, Inc. v. Contractor's Crane Serv., Inc., 435 A.2d 529, 532 (N.H. 1981); Ekco Enters., Inc. v. Remi Fortin Constr., Inc., 382 A.2d 368, 371 (N.H. 1978).

The evidence showed that Plaintiff did not have prior written or verbal approval from Defendant or its project engineer for the work described in change orders 2, 7 and 8. Plaintiff alleged at the hearing that it could not have known that it was doing work beyond its scope of work initially because it had to

---

[7]Incidentally, the American Institute of Architects form document that Plaintiff used for its change orders, AIA Document G701, states on its face: "Not valid until signed by the Owner, Architect and Contractor." See Pl.'s Ex. 15.

13

rely on the project engineer's flagging of the limits of clearing. Lenardson testified that after Plaintiff began clearing the site, he became aware that Plaintiff was going beyond its scope of work, which Plaintiff argues was limited to the area of the actual playing fields. Lenardson admitted, however, that he did not discuss with the Defendant his concern about the work as alleged additional work in change orders 2, 7 and 8 until nearly two months into the parties' three-month contract when Plaintiff submitted its change orders. That delay undercuts the Plaintiff's claim. In addition to Plaintiff's failure to show that change orders numbered 2, 7, and 8 dealt with work beyond the scope of the contract, the Court finds that Plaintiff did not show that it received Defendant's written or verbal authorization for the work alleged to be additional, or that the Defendant had actual knowledge that Plaintiff was doing work that Defendant knew was beyond the scope of the contract.

The Court separately considers Plaintiff's change orders numbered 1 and 9 because the evidence showed that the Defendant had actual knowledge of the circumstances underlying those change orders and could be found to have dispensed with the written authorization requirement. Plaintiff alleges that it is entitled

14

to payment of $37,000.00 on change order number 1 due to:

> Delay and disruption of the Army Corp of Engineers permitting of the wetland area for tree clearing and grubbing. Operational cost of $7,400/day (Personnel & Equipment) @ 5 days. Fifteen days will be added to the substantial completion date.

Pl.'s Ex. 15. Defendant admits that it did not have all of the necessary permits at the time that Plaintiff began working, but argues that the delay in permitting should not have caused delay because there was other work that Plaintiff could have done before the permits were granted. The evidence was unclear as to what other work Plaintiff could have done at that time, or whether Plaintiff was instructed to perform other work under the contract while waiting for the Defendant to obtain its permits. The Court finds that Plaintiff sufficiently demonstrated its basic right to recovery of $37,000.00 on change order number 1.

Plaintiff alleges that it is entitled to payment of $15,000.00 on change order number 9 due to:

> Project management of FSC subcontractors, PM includes scheduling of subcontractors, schedule documentation for subcontractors, organization of weekly construction meetings. This is a two month cost prorated from the initial construction start date.

Pl.'s Ex. 15. Bruce Kirsh, Defendant's Vice-President and Athletic Director, testified that Eric Lenardson proposed, and

15

Kirsh agreed, that Lenardson should act as project manager. Kirsh testified that this arrangement worked well for a time, but then did not work well because of Lenardson's subsequent disputes with subcontractors. Kirsh's testimony shows that Defendant had actual knowledge of Lenardson's project management work, which was outside of the scope of the parties' contract. Plaintiff has established its basic right to recovery on change order number 9.

Conclusion

For the reasons set forth above, the Court finds that Plaintiff has established, and Defendant failed to rebut, its basic right to recovery for $94,360.42 under the parties' contract, $37,000.00 on change order number 1 and $15,000.00 on change order number 9. The Court finds that the Plaintiff has not established its basic right to recovery on change orders numbered 2, 7 and 8. The Plaintiff's attachment on Defendant's real estate to secure its labor and materials lien shall therefore be reduced from $600,000.00 to $146,360.42.

**SO ORDERED.**

_____
James R. Muirhead
United States Magistrate Judge

Date: March 17, 2005

16

cc:  William J. Edwards, Esq.
     Thomas J. Pappas, Esq.
     Jeff. D. Bernarduci, Esq.
     Joseph S. Hoppock, Esq.
     Stanley A. Martin, Esq.