Merrimack
No. 94-403

## PRIME FINANCIAL GROUP, INC.

v.

## STEPHEN A. MASTERS D/B/A P.C. MASTERS CONSULTANTS

May 16, 1996

*Rinden Professional Association*, of Concord (*Paul A. Rinden* on the brief and orally), for the plaintiff.

*Hatfield, Moran & Barry, P.A.*, of Hillsborough (*Thomas T. Barry* on the brief and orally), for the defendant.

HORTON, J. The plaintiff, Prime Financial Group, Inc., appeals from an adverse jury verdict, arguing that the Superior Court

(*McGuire,* J.) improperly instructed the jury in response to jury questions. We directed the parties to file memoranda addressing the issue of whether this appeal should be dismissed as untimely filed under Supreme Court Rule 7(1). We hold that the appeal was timely filed, and affirm.

The parties' dispute arose out of a commercial equipment lease agreement and the attempted assignment of that lease. After the case was submitted to the jury, the jury posed two questions to the trial court. The court fashioned its own instructions and rejected the instructions submitted by the plaintiff. On March 17, 1994, the jury rendered a verdict in favor of the defendant, Stephen A. Masters d/b/a P.C. Masters Consultants (Masters). On March 24, 1994, the plaintiff filed a timely motion to set aside the jury verdict and for a new trial. The clerk's notice of the denial of that motion was dated April 12, 1994. On April 22, the plaintiff filed a motion for reconsideration of the order denying its motion to set aside the jury verdict and for a new trial. This motion was denied on May 7, 1994, and the clerk's notice of decision was dated May 10, 1994. The plaintiff filed a notice of appeal thirty days thereafter, on June 9, 1994.

Supreme Court Rule 7 determines the procedure for appealing from a lower court decision on the merits. The appellant must file a notice of appeal "within 30 days from the date on the clerk's written notice of the decision on the merits." SUP. CT. R. 7(1). Final judgment will be entered on the thirty-first day from the date on the clerk's written notice that the court has taken action on a timely filed post-verdict motion. SUPER. CT. R. 74(b). A timely filed post-trial motion will stay the running of the appeal period, whereas an untimely motion will not unless the untimeliness is waived by the lower court within the appeal period. SUP. CT. R. 7(1).

In *Petition of Ellis,* 138 N.H. 159, 636 A.2d 62 (1993), we considered whether successive motions for reconsideration stay the running of the appeal period. While that case dealt specifically with an administrative appeal pursuant to RSA 541:6 (1974), we noted that Supreme Court Rule 7 is treated in a similar fashion. *Id.* at 161, 636 A.2d at 63. In *Ellis,* we stated:

> [A]n appeal that is filed in this court within thirty days of the denial of the second reconsideration motion, but not filed within thirty days of the denial of the first motion for reconsideration, will be untimely to the extent that it seeks to appeal from the original superior court decision. *Id.* at 161–62, 636 A.2d at 63–64.

■ Unlike *Ellis*, the case at bar deals not with successive motions for reconsideration, but rather with a motion to set aside the jury verdict and for a new trial and a subsequent motion for reconsideration. At trial, the plaintiff submitted a memorandum and proposed jury instructions in response to the jury questions. The court rejected the proposed instructions. In its motion to set aside the verdict, the plaintiff asserted that one of the court's instructions was unresponsive and misleading. The court denied this motion. The plaintiff then moved for reconsideration of this decision.

We hold that *Ellis* does not apply to a motion for a new trial and a successive motion for reconsideration. When a court denies a party's motion for a new trial, the party should be allowed to point out the errors of the lower court's order, and the lower court should be given the opportunity to correct those errors. *Cf. Dziama v. City of Portsmouth*, 140 N.H. 542, 545, 669 A.2d 217, 218–19 (1995) (recognizing that in context of RSA 677:3 (1986 & Supp. 1988), successive motions for rehearing may be necessary to give zoning board of adjustment opportunity to correct its errors and allow court to consider all errors of board). Accordingly, we find that the plaintiff's motion for reconsideration stayed the running of the appeal period, and accordingly, its notice of appeal was timely filed. SUP. CT. R. 7(1). We therefore address the merits of the plaintiff's appeal.

Edward H. Smith, president of Databank Corporation, hired Masters as a regional manager for Databank. As a condition of employment, Masters was required to purchase a Databank Management System from the company for $12,900. Because Masters could not afford to purchase the equipment outright, Smith suggested that Masters obtain an equipment lease through the plaintiff. The plaintiff rejected Masters' application until Smith offered to guarantee the lease. Masters signed the equipment lease both as lessee and guarantor and Smith signed the lease as guarantor. After making several payments on the lease, Masters sought to terminate his employment with Databank. After discussing the matter with Smith, Masters entered into an "acknowledgement" with Smith, which purported to assign the lease to Smith, who took possession of the equipment. Masters had spoken with James Valz, the plaintiff's comptroller, but it was disputed at trial as to whether Valz gave permission for Masters to assign the lease to Smith. Masters also sent a letter to the plaintiff with a copy of the acknowledgment. Masters received no response to this letter. Smith made one payment on the lease pursuant to his obligation under the acknowledgment, which the plaintiff accepted. The lease, however, explicitly

made all assignments of the lessee's obligations without written consent of the lessor void. The lease also prohibited waiver of the terms of the lease except if the waiver was in writing. After Masters defaulted on his payments, the plaintiff repossessed the equipment and instituted separate actions against Masters and Smith, which were consolidated for trial.

After the case was submitted, the jury posed two questions. The first asked the court to clarify the obligation of the guarantors. Although the plaintiff argues in its brief that the trial court erred in instructing the jury with regard to the independent guarantor status of Masters and Smith, its notice of appeal does not raise this issue. Nor was it added by the plaintiff pursuant to Supreme Court Rule 16(3)(b). Therefore, this issue is not preserved for appeal. *See* SUP. CT. R. 16(3)(b); *Anglin v. Kleeman*, 140 N.H. 257, 263, 665 A.2d 747, 752 (1995).

The jury also posed the following question to the court: "If a company does not dispute the agreement, are they agreeing to it, by law?" The court rejected the plaintiff's request for an instruction based on RSA 382-A:2A-208(2) (1994), which states: "A signed lease agreement that excludes modification or rescission except by a signed writing may not be otherwise modified or rescinded . . . ." Instead, the court fashioned its own instruction based on implied waiver and modification. The jury rendered a verdict in favor of Masters, and against Smith.

The plaintiff correctly recognizes that RSA 382-A:2A-208 is not directly applicable because that provision was not effective until January 1, 1994, several years after the lease in question was signed. Instead, it argues that because courts often look to article 2 of the Uniform Commercial Code (UCC) when interpreting leases made prior to the adoption of article 2A, and because 382-A:2A-208 was based on an analogous provision in article 2, RSA 382-A:2-209 (1994), the trial court should have instructed the jury that when the lease required written modification the parties could not alter the contract except by such written modification. In short, the plaintiff's position is that the agreement between Smith and Masters may be effective as between those two individuals but does not affect their obligations with regard to Prime. We disagree. The trial court properly instructed the jury with regard to implied waiver and modification.

■■ First, we note that the provisions of article 2 of the UCC, dealing with sales of goods, do not apply to this case because the trial court specifically found that the contract at issue was a true lease and not a contract for the sale of goods. *But cf. Xerox Corp. v.*

*Hawkes*, 124 N.H. 610, 615, 475 A.2d 7, 9 (1984) (holding that warranty provisions of Article 2 of the UCC apply to warranties in an equipment lease). Second, as noted above, article 2A of the UCC, dealing with leases, does not control the provisions of the lease in this case because RSA 382-A:2A-208 was not effective until January 1, 1994. We therefore look to our common law to determine the validity of the provisions of this lease. *See In re Lisa G.*, 127 N.H. 585, 589, 504 A.2d 1, 3 (1986). We hold that in this State provisions in a contract which require waiver or modification of contract provisions to be in writing cannot completely restrict the parties' ability to orally alter the contract. *See* 17A C.J.S. *Contracts* §§ 373(a), 377(c) (1963); *see also D.M. Holden, Inc. v. Contractor's Crane Serv., Inc.*, 121 N.H. 831, 835, 435 A.2d 529, 532 (1981).

> Parties to a contract can not, even by an express provision in that contract, deprive themselves of the power to alter or vary or discharge it by subsequent agreement. An express provision in a written contract that no rescission or variation shall be valid unless it too is in writing is ineffective to invalidate a subsequent oral agreement to the contrary. In like manner, a provision that an express condition of a promise or promises in the contract can not be eliminated by waiver, or by conduct constituting an estoppel, is wholly ineffective. The promisor still has the power to waive the condition, or by his conduct to estop himself from insisting upon it, to the same extent that he would have had this power if there had been no such provision.

3A A. CORBIN, CORBIN ON CONTRACTS § 763, at 531 (1960).

This is not to say that in-writing provisions are wholly ineffective. The finder of fact must first determine that the parties intended to waive the in-writing clause of the contract. *See C.I.T. Corporation v. Jonnet*, 214 A.2d 620, 622 (Pa. 1965); *Menard & Co. Masonry v. Marshall Bldg.*, 539 A.2d 523, 526–27 (R.I. 1988). The waiver of the in-writing clause, however, may itself be implied from the conduct of the parties. *See Freeman v. Stanbern Const. Co.*, 106 A.2d 50, 54–55 (Md. 1954); *Menard & Co. Masonry*, 539 A.2d at 527.

Because the plaintiff contends that the trial court erred in its instructions to the jury, we will review the jury instructions to determine whether the judge "fully and correctly instruct[ed] the jury as to the law applicable to the case," and, if an error was made, "whether the jury could have been misled into basing its verdict on a misperception of the law." *Peterson v. Gray*, 137 N.H. 374, 377, 628 A.2d 244, 246 (1993) (quotations and emphasis omitted). In other words, "the test of adequacy of any charge is whether, taken as a

whole, [the court] fairly presented the case to the jury in such a manner that no injustice was done to the legal rights of the litigants." *Id.* (quotation omitted).

In its initial charge to the jury, the court stated:

[Y]ou are instructed that obligations under a contract or terms of a contract can be changed by either an express or an implied mutual agreement between the parties. If you find that the defendants Masters and Smith entered into an agreement on April 24th, 1987 whereby Masters transferred or assigned his lease obligation to Smith and that plaintiff, Prime, through its representatives, agreed to waive the in-writing clause of the lease and agreed to this transfer, then you must find defendant Masters not liable for breach of the equipment lease.

In response to the jury's question, the court gave the following charge:

Obligations under a contract or terms of a contract can be changed by either an express or implied mutual agreement between the parties. The written terms of a contract may be waived orally or by implication. Whether the parties have agreed to change the obligation under a contract, or the terms of a contract, must be determined under the facts of each case, including the conduct of the parties.

In specific response to your question, whether a company is agreeing to something or not by disputing it, is a question of fact for you to determine based on all of the evidence.

■ The court instructed the jury that it must find that the parties waived the in-writing clause of the contract and then find that the parties agreed to the assignment of the lease. The instruction in response to the jury question simply clarified that waiver and modification can be either express or implied and that the existence of waiver or modification must be determined based on the facts of the case. Taken as a whole, these instructions properly stated the law in such a manner that no injustice was done to the legal rights of the litigants. *See id.*

Finally, the plaintiff argues that the court's instruction was not responsive because the jury's question did not even raise the issue of implied modification or waiver. We disagree. We review the jury instructions in light of the evidence presented at trial to determine whether they fairly covered the issues in the case. *See Chellman v. Saab-Scania AB*, 138 N.H. 73, 79–80, 637 A.2d 148, 151–52 (1993). Masters sent the plaintiff a copy of the acknowledgment between

himself and Smith along with a letter which stated: "Enclosed is a copy of the agreement that releases P.C. Masters Consultants from repayment for lease #3381, and transfers said lease to Edward Smith." The letter also requested a confirmation "in regards to the transfer of this lease." Moreover, the plaintiff accepted payment on the lease directly from Smith after Masters and Smith entered into the acknowledgment. Viewed in this context, we cannot say that the instruction was improper. The jury's question can only be referring to the plaintiff's failure to respond to the letter and acknowledgment sent by Masters. The court's instruction, therefore, properly addressed this issue.

*Affirmed.*

BRODERICK, J., did not sit; the others concurred.