Hillsborough-northern judicial district
No. 2002-165

THE CADLE COMPANY, SERVICING AGENT FOR CADLE PROPERTIES OF
NEW HAMPSHIRE, INC.

v.

MAURICE BOURGEOIS & a.

Argued: January 14, 2003
Opinion Issued: April 28, 2003

*Ford & Weaver, P.A.*, of Portsmouth (*Marc W. McDonald* on the brief and orally), for the plaintiff.

*Victor W. Dahar, P.A.*, of Manchester (*S. William Dahar, II* on the brief and orally), for defendant Maurice Bourgeois.

*Pauline L. Guay*, of Manchester, by brief and orally, for defendant Irene Bourgeois.

*Backus, Meyer, Solomon, Rood & Branch, LLP*, of Manchester (*Barry M. Scotch* and *Erica Bodwell* on the brief, and *Mr. Scotch* orally), for defendant Dennis Proulx.

BRODERICK, J. The plaintiff, The Cadle Company, servicing agent for Cadle Properties of New Hampshire, Inc. (collectively, Cadle), appeals from a decision of the Superior Court (*Brennan*, J.) denying its petition for relief against the defendants, Maurice Bourgeois (Maurice), Irene Bourgeois (Irene) and Dennis Proulx (Dennis), and granting Dennis' petition to quiet title. We reverse in part, affirm in part, and remand.

This case has a complicated history and arises from debts incurred by Notre Dame Properties (NDP), a general partnership formed by Maurice and Dennis in 1987 for the purpose of acquiring and operating residential real estate. In 1990, NDP purchased property on Laval Street in Manchester, acquiring title in the partnership name. Maurice's wife, Irene, loaned NDP $120,000 towards the purchase, secured by a second mortgage on the property. The property was subject to a first mortgage held by a creditor unrelated to this appeal. Maurice and Dennis borrowed approximately $4,000,000 from Saint Mary's Bank (bank) to purchase other properties either in the name of NDP or individually, doing business as NDP.

In December 1991, the bank initiated suit against Maurice and Dennis to collect monies owed on past due notes. The bank also sued Irene as the alleged recipient of a fraudulent transfer. The bank settled separately with Dennis in March 1992. As part of the settlement, Dennis agreed to pay the bank $100,000. As collateral on his note, he executed an assignment to the bank of his one-half interest in NDP along with a mortgage on his one-half interest in the Laval Street property.

In late 1991 or early 1992, the relationship between Maurice and Dennis deteriorated and Maurice ceased taking an active role in the business affairs of NDP. In October 1992, Dennis filed documents with the Secretary of State withdrawing Maurice from the partnership and reregistering NDP as a trade name, with himself listed as the sole owner. As reflected on their tax returns, however, Maurice and Dennis continued to share equally in the profits from the Laval Street property through 1995, when Dennis began to assume all expenses and retained all rents collected.

In January 1994, the bank settled its suit with Maurice and Irene. The settlement agreement provided for a judgment against Maurice in the amount of $1,000,000, which he could satisfy by paying $300,000 under an agreed upon payment schedule. The promissory note which Maurice signed called for accelerated monthly payments starting at $275 and increasing in stepped amounts to $1,000 after several years. The settlement agreement contained a "kick out clause" whereby Maurice would be subject to the full $1,000,000 judgment if he did not adhere to the

payment schedule. In addition, the promissory note contained the following provisions:

> The acceptance by the Holder of any payment after any default hereunder shall not operate to extend the time of payment of any amount then remaining due hereunder or constitute a waiver of the rights, privileges or remedies of the Holder.
>
> No delay or omission on the part of the Holder in exercising any right, privilege or remedy shall impair such right, privilege or remedy or be construed as a waiver thereof or of any other right, privilege or remedy. No waiver of any right, privilege or remedy or any amendment to this Note shall be effective unless made in writing and signed by the Holder. Under no circumstances shall a waiver of any right, privilege or remedy on any one occasion constitute or be construed as a bar to the exercise of such right, privilege or remedy on any future occasion.

As collateral for the note, Maurice assigned to the bank his one-half interest in NDP and also executed a mortgage in its favor on his partnership interest in the Laval Street property. Irene signed the settlement agreement and received a release from the bank, but she did not sign the promissory note, the collateral assignment of her husband's partnership interest or the mortgage her husband executed in favor of the bank.

In April 1994, the bank assigned to Cadle all its rights under the settlement agreement and associated documents, including the promissory note, the collateral assignment of partnership interest and the mortgage. Except for one payment of $300, Maurice made regular monthly payments of $275, which Cadle accepted.

In May 1994, Irene filed suit against Maurice and Dennis as partners of NDP, in an attempt to collect the monies owed under the partnership's promissory note to her. In April 1995, Irene settled her claim against Dennis for a $60,000 note. As part of the settlement, Maurice transferred his one-half interest in NDP to Dennis and executed a quitclaim deed to Dennis for his one-half interest in the Laval Street property.

In January 2001, Cadle filed a petition in equity seeking to: (1) void the 1995 transfer of Maurice's partnership interest to Dennis; (2) impose a constructive trust upon the stream of income to which Irene was entitled under her 1995 settlement with Dennis; and (3) preclude Irene from assigning, pledging, liening, selling, discounting or encumbering her right to payment under Dennis' note. Cadle also sought an order that Maurice was in default under his settlement agreement allowing it to reinstate the

$1,000,000 judgment against him, and further requested a charging order regarding Maurice's partnership interest. Dennis countered with an equitable petition against Cadle and Maurice to quiet title to the Laval Street property.

The trial court consolidated the actions and held a three-day bench trial in December 2001. It found that Maurice did not sign the partnership withdrawal document filed with the Secretary of State's office in 1992. Nonetheless, it ruled that the document terminated Maurice's interest in NDP and, therefore, that Maurice's 1994 collateral assignment and mortgage to the bank were nullities. The trial court concluded that Cadle had no encumbrance on the partnership or its property and granted Dennis' petition to quiet title. It also ruled that Cadle, by accepting the $275 monthly payments from Maurice, was equitably estopped from enforcing the original terms of the promissory note. Additionally, the court ruled that Maurice was not subject to the "kick out clause" of the 1994 settlement agreement because he was not in default. The court, however, also refused to enforce the "kick out clause" because it ruled that Maurice was no longer a partner in NDP when he signed the agreement.

The trial court dismissed the claims against Irene, finding that she was not a guarantor or co-maker of the 1994 promissory note to the bank signed by her husband, nor did she have any obligation by constructive trust or otherwise to hold or use her property for the benefit of Cadle. The court concluded that the $60,000 settlement between Irene and Dennis represented one-half of the $120,000 mortgage and corresponded to one-half of the partnership's debt to Irene. Finally, the trial court denied Cadle's request for a charging order. Cadle moved unsuccessfully for reconsideration, and this appeal followed.

On appeal, Cadle argues that the trial court erred in: (1) failing to recognize that it had a valid legal or equitable interest in NDP or its Laval Street property; (2) denying its request for a charging order; (3) equitably estopping it from enforcing the terms of the settlement agreement with Maurice; (4) denying its request for a constructive trust against Irene; (5) considering certain evidence; and (6) granting inconsistent requests for findings of fact and rulings of law.

Cadle first argues that the trial court erred in failing to recognize that it had a valid legal or equitable interest in NDP or its Laval Street property. It contends that Maurice was still a partner in NDP in 1994 and, therefore, that the collateral assignment of his partnership interest to the bank and the mortgage to the bank on the Laval Street property were effective. In the alternative, it argues that if NDP terminated before 1994, Maurice held the Laval Street property as a tenant in common and granted a mortgage to the bank in that capacity.

Whether a partnership exists is a mixed question of law and fact. *Beverly v. McCullick*, 505 P.2d 624, 632 (Kan. 1973); *see Great Lakes Aircraft Co. v. City of Claremont*, 135 N.H. 270, 282 (1992) (mixed questions of law and fact concern the application of a rule of law to the facts and the consequent determination of whether the rule is satisfied). We will not overturn the trial court's ruling on a mixed question unless it is clearly erroneous. *Great Lakes Aircraft Co.*, 135 N.H. at 282. If, however, the court misapplies the law to its factual findings, we review the matter independently under a plain error standard. *Id.*

There is no dispute that Maurice and Dennis formed a partnership-at-will in 1987; the issue before us relates to the dissolution of their partnership. Dennis argues that the partnership was dissolved in 1992 when Maurice intentionally disengaged from the affairs of the partnership and its operations. He further asserts that the withdrawal document filed with the Secretary of State was *prima facie* evidence of Maurice's intent to withdraw from and dissolve the partnership.

■ "Once a partnership is shown to exist, there is a presumption that its existence continues until the contrary is shown, or until it is dissolved and its affairs wound up." 59A AM. JUR. 2D *Partnership* § 87 (1987). A partnership-at-will may be dissolved at any time by the express will of any partner. RSA 304-A:31, I(b) (1995). "Express will" entails *actual notice* to the other partners of an intent to dissolve. *Miami Subs Corp. v. Murray Family Trust and Kenneth Dash Partnership*, 142 N.H. 501, 510 (1997). Mere abandonment of a partnership's affairs does not satisfy the notice requirement. *See Duncan v. Bartle*, 216 P.2d 1005, 1012 (Or. 1950); *see also C-4 Corp. v. E.G. Smith Const. Products*, 894 S.W.2d 242, 245 (Mo. Ct. App. 1995) ("partners may consent to relinquish exclusive control of the partnership to a managing partner").

■ Here, there was no evidence that Maurice provided *actual notice* to Dennis in 1992 of his intent to dissolve the partnership. The withdrawal document filed with the Secretary of State was never signed by Maurice nor authorized by him and, therefore, could not have provided actual notice to Dennis of any intention to dissolve the partnership. Merely "walking away from" the operations of the partnership, as Maurice allegedly did, did not constitute legal notice of dissolution, either. Furthermore, there was no evidence in the record, even assuming a dissolution, that there was any attempt by Dennis and Maurice to wind up the partnership affairs. In fact, they continued to act as partners by equally sharing the profits of the Laval Street property through 1995. *See* RSA 304-A:7, IV (1995) ("The receipt by a person of a share of the profits

of a business is prima facie evidence that he is a partner in the business . . . .").

■Accordingly, we conclude, on the record before us, that Maurice did not provide actual notice to Dennis of his intent to withdraw from the partnership until 1995, when he transferred his one-half partnership interest to Dennis and executed a quitclaim deed to him of his interest in the Laval Street property. Having concluded that the partnership was in existence in 1994, we hold that Maurice's collateral assignment of his partnership interest in favor of the bank as part of the settlement agreement was effective because a partner is legally entitled to assign his partnership interest to a third party. *See* RSA 304-A:27 (1995).

We next consider whether Maurice could effectively execute a mortgage to the bank on his interest in the Laval Street property. Dennis contends that the mortgage was invalid because it was executed in Maurice's name, individually, and not in the partnership name. *See* RSA 304-A:8, III (1995) (title acquired in the partnership name can only be conveyed in the partnership name). Alternatively, he asserts Maurice did not have the authority to encumber partnership property in this instance, arguing that the mortgage was executed to settle Maurice's personal debt and was not part of an assignment of rights of all partners.

■ Dennis relies upon the rule that "[a] partner's right in specific partnership property is not assignable except in connection with the assignment of rights of all the partners in the same property." RSA 304-A:25, II(b) (1995). The purpose behind this accepted proposition is that "partnership property is to be kept intact for partnership purposes and creditors." *Windom Nat. Bank v. Klein*, 254 N.W. 602, 604 (Minn. 1934). Here, however, the debt that Maurice and Dennis negotiated through their respective settlement agreements with the bank was debt that arose in the ordinary course of the partnership business. Furthermore, Maurice executed the 1994 mortgage as "Maurice L. Bourgeois, d/b/a Notre Dame Properties." "Since partners have authority to pay firm debts, they can mortgage partnership real property to secure partnership debts." 59A AM. JUR. 2D *Partnership* § 319 (1987); *see Schneider v. Schmidt*, 88 A. 179, 182 (N.J. Ch. 1913). Accordingly, we hold that the mortgage that Maurice executed in favor of the bank was effective.

Our inquiry does not end there, however. Because Cadle's *current* interests in NDP and the Laval Street property are at issue, we must also consider the effect of Maurice's 1995 assignments to Dennis and his associated withdrawal from the partnership on the 1994 collateral assignment and mortgage to the bank.

█ Because a partnership requires the participation of two or more partners, the withdrawal of one partner in a two-person partnership causes dissolution. *Resolution Trust Corp. v. Ocotillo West*, 840 F. Supp. 1463, 1481 (D.N.M. 1993); *cf. Miami Subs Corp.*, 142 N.H. at 510 (applying same principle to joint ventures). Therefore, Maurice's withdrawal in 1995 effected dissolution of the partnership. We do not have sufficient information in the record before us, however, to determine whether the partnership was in fact terminated. *See* RSA 304-A:30 (1995) ("On dissolution the partnership is not terminated, but continues until the winding up of partnership affairs is completed."). Accordingly, we remand to the trial court to determine whether the 1994 collateral assignment of Maurice's partnership interest was compromised by his withdrawal from the partnership in 1995.

█ The mortgage to the bank, however, was not affected by the subsequent transfer of the Laval Street property to Dennis. "The fact that mortgaged real estate is transferred does not release the real estate from the mortgage, unless the mortgage is unrecorded and the transferee qualifies to take free of it under the applicable recording act." RESTATEMENT (THIRD) OF PROPERTY (MORTGAGES) § 5.1 comment *b* at 330 (1997). Here, the mortgage was recorded. We therefore conclude that Cadle's mortgage continues to encumber the Laval Street property.

█ Cadle further argues that the trial court erred in denying its request for a charging order. Pursuant to RSA 304-A:28 (1995), a judgment creditor of a partner may obtain a court order charging the debtor partner's interest in the partnership with payment of the unsatisfied amount of a judgment, including interest. "[Charging orders] are purely statutory tools that judgment creditors use to reach partnership interests of indebted partners." *Green v. Bellerive*, 763 A.2d 252, 256 (Md. Ct. Spec. App. 2000), *cert. denied*, 534 U.S. 824 (2001). The statute authorizing a charging order, however, presupposes that a partnership exists. *See Wills v. Wills*, 750 S.W.2d 567, 574 (Mo. Ct. App. 1988) (construing similar state statute). Because we are remanding to the trial court to determine the effect of Maurice's 1995 withdrawal on the partnership, we also remand the question of the issuance of a charging order in the event the trial court determines that the 1995 partnership was not terminated.

Next, Cadle argues that the trial court erred in equitably estopping it from enforcing the terms of the settlement agreement with Maurice. The trial court concluded that "Mr. Bourgeois reasonably relied on Cadle's acceptance of [regular payments of $275 per month] and would now be unjustly injured if the court were to enforce the original terms [of the agreement]." We will sustain the findings and conclusions of the trial court

unless they are unsupported by the evidence or erroneous as a matter of law. *See New Canaan Bank & Trust v. Pfeffer*, 147 N.H. 121, 127 (2001).

Equitable estoppel serves to forbid one to speak against his own act, representations or commitments communicated to another who reasonably relies upon them to his injury. *Id.* at 126. The party asserting estoppel must prove the following essential elements: (1) a knowingly false representation or concealment of material facts; (2) a recipient who was intentionally, or through culpable neglect, induced to rely upon the false representation or concealment, ignorant of the truth; and (3) a resultant injury. *See id.* Reliance is unreasonable when the party bringing the estoppel claim, at the time of his or her reliance or at the time of the representation or concealment, knew or should have known that the conduct or representation was either improper, materially incorrect or misleading. *Id.* Incorporated into the concept of reasonable reliance is the requirement that the moving party exercise due diligence to learn the truth of a matter relied upon. *See id.*

Maurice contends that Cadle's acceptance of his $275 monthly payments for six years constitutes a basis for finding equitable estoppel. He argues that the actions of Cadle in accepting the payment constituted an implicit representation to him, upon which he relied, that the payment schedule had been modified and that Cadle would not escalate payments or consider him in default. In support of his position, Maurice relies upon *Prime Financial Group v. Masters*, 141 N.H. 33, 37 (1996), in which we held that provisions in a contract requiring any waiver or modification to be in writing did not eliminate the parties' ability to alter the contract orally.

*Prime Financial* involved an equipment lease agreement and its attempted assignment. *Id.* at 34. The agreement explicitly precluded the assignment of the lessee's obligations without written consent of the lessor and contained a provision prohibiting waiver of the terms of the lease unless the waiver was in writing. *Id.* at 35-36. Despite these provisions, the lessee assigned its rights to a third party without written consent. *Id.* at 35. After the third party defaulted on his payments, the lessor instituted suit against the lessee. *Id.* at 36. On appeal, the lessor argued that the trial court erred in instructing the jury with regard to implied waiver and modification. *Id.* In upholding the trial court's jury instruction, we stated that the waiver of the in-writing clause could be implied from the conduct of the parties. *Id.* at 37. We also stated:

> In like manner, a provision that an express condition of a promise or promises in the contract can not be eliminated by waiver, or by conduct constituting an estoppel, is wholly ineffective. The promisor still has the power to waive the condition, or by his

conduct to estop himself from insisting upon it, to the same extent that he would have had this power if there had been no such provision.

*Id.* (quotation omitted).

Maurice argues that this stands for the proposition that a court can find estoppel based upon the parties' conduct, despite contract provisions to the contrary. Cadle relies upon the provisions in the promissory note, which explicitly state that accepting partial payments does not operate as a waiver, and argues that *Prime Financial* is not controlling because it involved a creditor who failed to object when the other party to the contract acted contrary to the contract's provisions. Here, Cadle argues, a situation arose, namely, a relaxation of the payment schedule, that was expressly contemplated by the contract.

We need not decide whether *Prime Financial* applies to the facts of this case, however, because we conclude that Maurice failed to meet his burden of proving the elements of equitable estoppel. He furnished no evidence suggesting that Cadle intentionally or through culpable neglect misrepresented facts which induced him to believe that he would not be held accountable to the original terms of the 1994 settlement agreement. In addition, he failed to demonstrate that he exercised due diligence to ascertain whether Cadle's acceptance of his reduced payment constituted a modification to the original agreement. We therefore hold that equitable estoppel does not apply here and that Cadle may enforce the original terms of the bank's settlement agreement with Maurice.

Cadle also argues that the trial court erred in denying its request for a constructive trust on the payments received by Irene from Dennis pursuant to their April 1995 settlement agreement. Cadle contends that Irene knew, or should have known, of Maurice's 1994 collateral assignment and mortgage to the bank because she signed the associated settlement agreement. It further argues that Irene conspired with her husband to circumvent its rights as assignee of the bank by entering into the 1995 agreement with Dennis, whereby he agreed to pay her on an existing promissory note and Maurice agreed to convey his interest in both the partnership and the Laval Street property to Dennis. Cadle argues that Irene would not have been paid on her note but for the fact that she collaborated with Maurice.

A constructive trust may only be imposed when clear and convincing evidence demonstrates a confidential relationship existed between two people, that one of them transferred property to the other, and that the person receiving the property would be unjustly enriched by

retaining the property, regardless of whether the person obtained the property honestly. *In re Estate of Cass*, 143 N.H. 57, 60 (1998). A confidential relationship exists if there is evidence of a family or other personal relationship in which one person justifiably believes that the other will act in his or her interest. *See id.* A person may be unjustly enriched if he or she obtains title to property by fraud, duress, or undue influence, or violates a duty that arises out of a fiduciary relation to another. *Id.*

We need not decide whether a confidential relationship existed between Irene and Dennis under the facts of this case because Cadle has failed to show that Irene would be unjustly enriched by retaining the benefit of her agreement with Dennis. Indeed, the payments received by Irene arose from her 1990 note from NDP, which was secured by a mortgage recorded prior in time to any assignment to the bank or Cadle. Furthermore, Irene had no duty to Cadle. The terms of the 1994 settlement agreement between Irene, Maurice and the bank did not request or require Irene to sign the collateral assignment of partnership interest, the promissory note or the mortgage. For these reasons, we affirm the trial court's dismissal of Cadle's claims against Irene.

In light of our holding that Maurice's 1994 collateral assignment and mortgage to the bank were effective, we need not address Cadle's remaining arguments.

*Reversed in part; affirmed in part; remanded.*

BROCK, C.J., and NADEAU, DALIANIS and DUGGAN, JJ., concurred.