FILED

OCT 06 2011

SUSAN M SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

NOT FOR PUBLICATION

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

| | |
|---|---|
| In re: | ) BAP No.   CC-11-1165-PaDKi |
| | ) |
| IK/S-BAR, LLC, | ) Bk. No.   LA 10-64247-VZ |
|        Debtor. | ) |
| _____ | ) |
| | ) |
| IK/S-BAR, LLC, | ) |
| | ) |
|        Appellant, | ) |
| | ) |
| v. | ) **M E M O R A N D U M**[*] |
| | ) |
| DIRECT CAPITAL CORPORATION, | ) |
| | ) |
|        Appellee. | ) |
| _____ | ) |

Argued and Submitted at Pasadena, California
on September 23, 2011

Filed – October 6, 2011

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Vincent Zurzolo, Bankruptcy Judge, Presiding

_____

Appearances:    Michael Sanford Kogan Esq. of Ervin, Cohen &
Jessup LLP appeared for appellant IK/S-Bar, LLC.
No appearance for appellee Direct Capital
Corporation.

_____

Before: PAPPAS, DUNN and KIRSCHER, Bankruptcy Judges.

---

     [*] This disposition is not appropriate for publication.
Although it may be cited for whatever persuasive value it may
have (see Fed. R. App. P. 32.1), it has no precedential value.
See 9th Cir. BAP Rule 8013-1.

Appellant, chapter 11[1] debtor in possession IK/S-Bar, LLC ("IK/S"), appeals the bankruptcy court's order granting the motion of appellee Direct Capital Corporation ("Direct Capital") for relief from the automatic stay to enforce its rights under an equipment lease. We AFFIRM.

**FACTS**

IK/S filed for protection under chapter 11 of the Bankruptcy Code on December 21, 2010, and has, since then, continued to operate its business as a debtor in possession.

IK/S is managed by its Managing Member, Ivan Kane ("Kane"), an entrepreneur who is the principal of several other restaurant-related corporations and businesses. In 2008, two of Kane's controlled corporations, Ivan Kane Enterprises, Inc. and The Gin Joint, LLC (the "Original Lessees"), entered into an Equipment Lease Agreement (the "Lease") with Capital Network Leasing Corp. ("Capital Network") pertaining to certain audio and kitchen equipment. Kane signed the Lease for both of the Original Lessees as their President. The Lease required the Original Lessees to make monthly lease payments, and took effect on May 1, 2008, with the signature of Capital Network's authorized representative. There is no reference in the Lease to IK/S.

The Lease contains several provisions relevant in this dispute: Paragraphs 3 and 6 deal with choice of law, and provide that the Lease shall be interpreted under the laws of the State

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037. All "Civil Rule" references are to the Federal Rules of Civil Procedure.

2

of New Hampshire;[2] Paragraph 4 prohibits assignment of the Lease by the Original Lessees without first obtaining Capital Network's written consent; and Paragraph 24 prohibits waiver of any of Capital Network's rights under the Lease absent its prior written consent.

Sometime in 2008, Kane purportedly assigned all rights and obligations of the Original Lessees to IK/S with an effective date of March 18, 2008. ER at 78-80. There is no evidence in the record that IK/S, Kane or the Original Lessees ever notified Capital Network of the purported assignment of the Lease to IK/S.

Capital Network assigned its rights as lessor under the Lease to Direct Capital on May 1, 2008; this assignment was acknowledged in writing by Kane. Direct Capital's principal place of business is 155 Commerce Way, Portsmouth, New Hampshire.

After IK/S's bankruptcy filing, Direct Capital filed a motion for relief from the automatic stay on February 3, 2011, seeking an order authorizing it to enforce its rights under the Lease and, presumably, to recover possession of the equipment from IK/S. As grounds for relief under § 362(d)(1), Direct Capital alleged that its interest in the equipment was not

---

[2]  Paragraph 3 states that the Lease is intended to be a Statutory Finance Lease under the laws of New Hampshire. Paragraph 6 states that the parties agree that the Lease should be interpreted according to the laws of the state of the Lessor's principal place of business, or, if assigned, the Lessor's assignee's principal place of business. Because the parties have raised no such issue, we express no opinion concerning whether the Lease, under applicable state law, is indeed a "true lease" which must be assumed or rejected in the bankruptcy case by IK/S under § 365, or whether the Lease may be treated as a financing arrangement, and its terms restructured via a chapter 11 plan.

3

adequately protected, and that the fair market value of the leased equipment was declining. Under § 362(d)(2)(A) and (B), Direct Capital argued that IK/S had no interest in the leased equipment, and that it was not necessary for an effective reorganization. It appears undisputed that there had been no payments made to Direct Capital on the Lease by any party in the eight months before the filing of the stay relief motion. The motion was supported by a declaration of Direct Capital's Collections Supervisor, Ryan Hodsdon.

IK/S filed an opposition to this motion on February 11, 2011. In its opposition, IK/S argued that the stay relief motion should be denied because IK/S had equity in the equipment; the equipment was critical to IK/S's reorganization efforts; and Direct Capital was seeking to place its interests ahead of other secured creditors, and that the value of IK/S's assets would be enhanced by continuing as a going concern, something it could not do without the equipment. The opposition was supported by the declaration of Ivan Kane.

The bankruptcy court conducted a hearing on Direct Capital's motion for relief from stay on March 8, 2011[3] at which counsel for IK/S and Direct Capital appeared. Direct Capital's attorney argued that the Lease was not an asset of the IK/S bankruptcy estate, noting that it had not been signed by IK/S, and that the

---

[3] IK/S provided the Panel with a partial transcript of the March 8, 2010 hearing, including only the bankruptcy court's oral findings and decision announced at the end of the hearing. The Panel has elected to review the full transcript of the hearing found in the bankruptcy court's docket. O'Rourke v. Seaboard Sur. Co. (In re E.R. Fegert, Inc.), 887 F.2d 955, 958 (9th Cir. 1989).

4

Lease prohibited any assignment by the Original Lessees. Direct Capital's lawyer next noted that no payments had been made by any party for the previous nine months.

IK/S's attorney responded that all relevant issues had been addressed in its opposition. Counsel's sole comment concerning Direct Capital's argument that the Lease was not property of IK/S was:

> One other fact that — the issue that was raised a number of times about [the equipment] not being property of the estate, [§] 541 is very clear that this is — that a lease is property of the estate. The Debtor has an equitable certainly interest in the lease and the use of the equipment.

Hr'g Tr. 4:16-21, March 8, 2011.

After considering the record and the arguments of counsel, the bankruptcy judge announced his findings and decision on the record. The court focused on whether the Lease was property of the bankruptcy estate:

> The moving party has sought relief from stay on two grounds. The two that I find most pertinent are as follows: The moving party has given me evidence which is not controverted by the Debtor that the property [] is subject to a lease and that the lease was made between the moving party and another entity and that there is a provision in the lease that prohibits assignment of rights under the lease without the consent of the lessor.
>
> This is not contradicted by [IK/S]. And that in and of itself would constitute cause to grant relief from stay under (d)(1).

Hr'g Tr. 5:24—6:10.

The bankruptcy court also noted, as a second reason for its decision, that no lease payments had been made. The court acknowledged that if a lessor accepts payments from a party other than the lessee which is in possession of the property subject to

5

a lease, an argument could be made "not always, but sometimes" that the lessor had waived the anti-assignment provision in the lease. Hr'g Tr. 6:11-17. However, the bankruptcy court did not find that such a waiver had occurred in this case. Instead, the bankruptcy court concluded that Direct Capital had satisfied its burden under § 362(d)(1) of showing "cause" and granted relief from stay. It did not address Direct Capital's claim for relief under § 362(d)(2).

The bankruptcy court entered its order granting Direct Capital's motion for relief from the automatic stay on April 8, 2011. IK/S filed a timely appeal on April 12, 2011.

**JURISDICTION**

The bankruptcy court had jurisdiction under 28 U.S.C. § 1334 and 157(b)(2)(G). We have jurisdiction under 28 U.S.C. § 158.

**ISSUE**

Whether the bankruptcy court abused its discretion in granting relief from stay to Direct Capital under § 362(d)(1)?

**STANDARD OF REVIEW**

An order granting relief from the automatic stay is reviewed for abuse of discretion. Kronemyer v. Am. Contractors Indem. Co. (In re Kronemyer), 405 B.R. 915, 919 (9th Cir. BAP 2009). In applying the abuse of discretion standard, we first "determine de novo whether the [bankruptcy] court identified the correct legal rule to apply to the relief requested." United States v. Hinkson, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc). If the correct legal rule was applied, we then consider whether its "application of the correct legal standard was (1) illogical, (2) implausible, or (3) without support in inferences that may be

6

drawn from the facts in the record." Id. Only in the event that one or more of these three apply are we then able to find that the bankruptcy court abused its discretion. Id.

**DISCUSSION**

As a preliminary matter, we note that the bankruptcy court granted Direct Capital's motion only under § 362(d)(1), finding adequate "cause" for relief because IK/S was not a lessee under the Lease, and consequently, that the Lease was not property of the estate. As a result, the extensive discussion in IK/S's appellate brief concerning § 362(d)(2), its "equity" in the leased equipment, and its critical need for the equipment to reorganize, is largely irrelevant in this appeal.[4] The standards for relief set forth in §§ 362(d)(1) and (d)(2) are independent and alternative. Can-Alta Props., Ltd. v. State Sav. Mortg. Co. (In re Can-Alta Props., Ltd.), 87 B.R. 89, 92 (9th Cir. BAP

---

[4] As discussed below, the Panel affirms the bankruptcy court's decision to grant relief from stay under § 362(d)(1), and did not consider in its deliberations IK/S's arguments under § 362(d)(2). Nevertheless, subsequent developments disclosed by counsel for IK/S at the Panel hearing undercut IK/S's argument that the Lease and equipment were necessary for reorganization. Counsel informed the Panel that he had filed IK/S's disclosure statement and plan of reorganization the previous day. See Disclosure Statement at dkt. no. 122. Page 9 of the Disclosure Statement states that the restaurant and all assets of IK/S were sold and executory contracts were assigned to the new owners, with the sale and assignment closing on September 14, 2011, or one week before the hearing before the Panel. IK/S had received the proceeds from the sale and filed a liquidation plan. Excluded from the sale and assignment were the Lease and equipment at issue in this appeal. See Asset Purchase Agreement ¶ 1.2(g) at dkt. no. 101. Thus, contrary to the repeated arguments of IK/S that the equipment was necessary for a possible sale and reorganization, the sale was completed and a liquidation plan filed without including the Lease or the equipment.

7

1988). In other words, relief from stay may be granted for "cause" under subsection (d)(1) despite the existence of debtor's equity in the property, or its need for the property in its reorganization. Id.

Similarly, IK/S's discussion of adequate protection in this context is also less than helpful. While a "cause" for stay relief explicitly referenced in § 362(d)(1) is a lack of adequate protection, it is but one example of cause, rather than the exclusive ground for relief under § 362(d)(1). Ellis v. Parr (In re Ellis), 60 B.R. 432, 435 (9th Cir. BAP 1985). Instead, what constitutes cause to terminate the stay is determined on a case by case basis. Delaney-Morin v. Day (In re Delaney-Morin), 304 B.R. 365, 369 (9th Cir. BAP 2003) (citing MacDonald v. MacDonald (In re MacDonald), 755 F.2d 715, 717 (9th Cir. 1985)).

Finally, under § 362(g)(2), the party seeking to preserve the stay, in this case IK/S, had the ultimate burden of proof on whether good cause existed to justify relief from the stay. In re Ellis, 60 B.R. at 435.[5]

---

[5] At oral argument, counsel for IK/S insisted that Direct Capital had not sought relief under § 362(d)(1) in that it had not "checked that box" on the form motion for relief from stay used in the Central District of California bankruptcy court. Consequently, counsel argued, IK/S was not required and had no reason to make an offer of adequate protection to Direct Capital before the motion hearing. After review of the record, it appears counsel's representation is incorrect. On its form motion, Direct Capital checked the boxes marked "3. Grounds for Relief from Stay: (a) Pursuant to 11 U.S.C. § 362(d)(1), cause exists to grant Movant the requested relief from stay as follows: (1) Movant's interest in the Property is not adequately protected." IK/S Excerpts of Record at p. 7; see also dkt. no. 43 at p. 3. Counsel's argument is also not consistent with

(continued...)

8

After its review of the record, the bankruptcy court found that the only relevant evidence submitted showed that the Lease had been entered into by entities other than IK/S as lessee, and that the Lease expressly prohibited assignment of "rights under the lease or the lessee's interest in the Lease without the consent of the lessor." Hr'g Tr. 6:1-7. Since insufficient evidence was presented by IK/S to prove that Direct Capital had consented to any assignment, the bankruptcy court concluded that IK/S had no cognizable interest in the Lease. The bankruptcy court did not err in its decision.

If a chapter 11 debtor has no interest in a leased property, it is not property of the bankruptcy estate. Arizona Appetito's Stores, Inc. v. Paradise Vill. Investment Co. (In re Arizona Appetito's Stores, Inc.), 893 F.2d 216, 218 (9th Cir. 1990).[6] Because IK/S was not a party to the Lease, the enforcement of the Lease is a matter between Direct Capital and the Original Lessees, Ivan Kane Enterprises, Inc. and The Gin Joint, LLC. Since these are all nondebtor parties, that contest must be

_____

[5](...continued)
IK/S's opposition to the stay relief motion it filed in the bankruptcy court, where IK/S devoted most of three pages to responding to Direct Capital's § 362(d)(1) arguments. IK/S Excerpts of Record at pp. 63-65; see also dkt. no. 56 at 9-11.

[6]  In a brief comment at the hearing in the bankruptcy court, IK/S argues that "the issue that was raised by counsel a number of times about it not being property of the estate, [§] 541 is very clear that this is — that a lease is property of the estate. The Debtor has an equitable certainly interest in the lease and the use of the equipment." Hr'g Tr. 4:17-21. Although IK/S is correct that "a" lease may be property of the estate under § 541(a), IK/S has not shown through the facts of this case that "this" Lease was property of its bankruptcy estate.

9

adjudicated in state court. As the Ninth Circuit has long held, "cause" exists for relief from stay under § 362(d)(1) where the issues are more appropriately adjudicated in a state court. Christensen v. Tucson Estates, Inc. (In re Tucson Estates, Inc.), 912 F.2d 1162, 1169 (9th Cir. 1990); Piombo Corp. v. Castlerock Props. (In re Castlerock Props.), 781 F.2d 159, 163 (9th Cir. 1986).

The commencement of a bankruptcy case creates an estate comprised of all legal or equitable interests of the debtor in property, wherever located and by whomever held, as of the commencement of the case. § 541(a)(1). Although § 541 provides the framework for determining the scope of the bankruptcy estate, it does not provide the rules for determining whether the debtor has an interest in property in the first place. Instead, the bankruptcy court must look to state law to determine whether, and to what extent, the debtor has any legal or equitable interests in property as of the commencement of the case. Butner v. United States, 440 U.S. 48, 54-55 (1979) ("Congress has generally left the determination of property rights in the assets of a bankrupt's estate to state law. . . . Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding."); Gaughan v. Edward Dittlof Rev. Tr. (In re Costas), 555 F.3d 790, 794 (9th Cir. 2009).

The bankruptcy court's analysis in this case is consistent with the law of New Hampshire. The Lease contains two choice of law clauses governing its interpretation, both instructing that

10

its terms are to be interpreted using New Hampshire law.  A forum selection clause in a contract is presumptively valid.  <u>Doe 1 v. AOL LLC</u>, 552 F.3d 1077, 1083 (9th Cir. 2009) (citing  <u>M/S Bremen v. Zapata Off-Shore Co.</u>, 407 U.S. 1, 17 (1972)).

As a general rule, the courts of New Hampshire will enforce a contract according to the plain meaning of its terms, and when interpreting a contract, the "inquiry focuses on the intent of the contracting parties at the time of the agreement."  <u>R. Zoppo Co. v. City of Dover</u>, 124 N.H. 666, 671, 475 A.2d 12, 16 (N.H. 1984).  "In the absence of ambiguity, the parties' intent will be determined from the plain meaning of the language used.  The words and phrases used by the parties will be assigned their common meaning, and we will ascertain the intended purpose of the contract based upon the meaning that would be given to it by a reasonable person."  <u>Greenhalgh v. Presstek</u>, 152 N.H. 695, 698, 886 A.2d 1000, 1003 (N.H. 2005).

IK/S has not suggested that terms of the Lease are in any fashion ambiguous.  Specifically, it has not questioned the meaning of the provisions of the Lease prohibiting an assignment of lessee rights by the Original Lessees absent the written consent of the lessor, and prescribing that no waiver of the Lease's terms is permitted without written approval of the lessor.  IK/S has not argued, nor submitted any evidence to show, that Direct Capital was notified and consented to the assignment of the Lease from the Original Lessees to IK/S.  Instead, IK/S argues that Direct Capital impliedly waived the anti-assignment provisions in the Lease by accepting lease payments directly from IK/S.

Assuming IK/S did indeed make direct lease payments at some time to Direct Capital, the New Hampshire Supreme Court has considered a similar case of an equipment lease agreement and its purported assignment. As in this appeal, in Prime Fin. Group v. Masters, 676 A.2d 528 (N.H. 1996), the lease agreement precluded the assignment of the lessee's rights without the written consent of the lessor. Id. at 529. The lease agreement also contained a provision forbidding a waiver of any of the lessor's rights under the lease unless the waiver was in writing. Id. Despite these provisions, the lessee in Masters assigned its rights to another party without the lessor's consent. Id. However, unlike the facts here, the original lessee notified the lessor of the assignment, and sought its consent. While the lessor did not grant consent, it thereafter accepted payments from the assignee. A jury in the trial court determined, based on the facts, that the parties to the lease had agreed to waive the contractual provision requiring assignments of the lease to be in writing, and that the lessor had effectively agreed to the assignment, as indicated by its conduct. The New Hampshire Supreme Court found no error in the trial court proceedings, concluding that a waiver of the anti-assignment provisions could be implied by the conduct of the parties. Id.

We believe a fair view of Masters would require that the bankruptcy court enforce an anti-assignment clause in a lease unless, as the trier of fact, it finds that the parties had agreed to modify that provision. However, the lessor in Masters had not only accepted payments from the assignee, he had been notified earlier of the assignment, and requested to consent

12

prior to acceptance of lease payments from the purported assignee. In other words, it was the lessor's acceptance of lease payments with both the knowledge of their source, and that there had been an assignment of the lease, that constituted evidence of an implied, mutual agreement to modify the anti-assignment clause which was accepted by the trial jury and ultimately approved by the New Hampshire Supreme Court.

In this appeal, IK/S offered no evidence to the bankruptcy court to show that the Original Lessees or IK/S had notified Capital Network or Direct Capital of the assignment of the lessee's interest to IK/S, nor was the lessor's consent to an assignment ever sought or obtained. Instead, IK/S bases its argument that there was waiver on the Kane declaration in the bankruptcy case by alleging, merely, that "[IK/S] has made all of the payments in the amount of $40,579.55 on the Lease." IK/S repeats this precise claim in its appellate brief. IK/S Op. Br. at 2. While these words appear to be carefully selected, and imply that IK/S made all payments required under the Lease, as confirmed by IK/S's attorney at oral argument, a more precise statement, according to the supporting documentation provided by IK/S in the record, would be that "All payments that were made on the Lease were made by IK/S." Indeed, it is undisputed that no payments on the Lease were made in the nine months prior to the hearing on the stay relief motion.[7]

---

[7] The supporting documentation for IK/S's claim that it was the source of payments made on the Lease is a one-page list, headed "IK/S BAR, LLC Equipment Leasing Expense Record." It is a simple three column chart that includes the date, vendor (all
(continued...)

13

Given the evidence submitted by IK/S, the bankruptcy court did not err in its finding that "no payments have been made." Hr'g Tr. 6:11-12. The bankruptcy court followed this finding with an explanation that "if payments had been made consistently and they're accepted by a lessor from someone who is in possession of property subject to a lease who is not the lessee, an argument can be made – not always, but sometimes can be made with regards to a waiver of the anti-assignment provision. But I've reviewed the motion and the opposition very carefully, and the moving party has carried its burden under Section 362(d)(1). Based upon the foregoing findings of fact and conclusions of law, the motion is granted." Hr'g Tr. 6:11-21.

The Lease included an anti-assignment clause. Consistent with the New Hampshire case law, it appears the bankruptcy court considered whether the parties by their conduct had waived the anti-assignment clause where the lessor purportedly accepted payments from the assignee. The bankruptcy court declined to accept the evidence presented by IK/S as adequate to show that it had made all of the required payments under the lease to Direct Capital.

Whether Direct Capital had impliedly consented to the Original Lessees' assignment of the Lease to IK/S was a question

---

[7](...continued)
Direct Capital), and amount of alleged payments. No copies of cancelled checks or other proof of the details of the alleged payments to Direct Capital were offered. Moreover, the record also reflects that the business address of the Original Lessees is the same as the address of IK/S, and the name of one of the Original Lessees, Ivan Kane Enterprises, Inc., is similar to the d/b/a of IK/S, Ivan Kane's Café.

14

of fact.  <u>Masters</u>, 676 A.2d at 531.  That IK/S made some, but not all of the required lease payments directly to Direct Capital, is some evidence that Direct Capital consented to the assignment of the Lease, but the bankruptcy court declined to so find.  Where there are two permissible views of the evidence, the fact-finder's choice between them cannot be clearly erroneous.  <u>United States v. Working</u>, 224 F.3d 1093, 1102 (9th Cir. 2000)(en banc).

We conclude that, on this record, the bankruptcy court did not abuse its discretion in granting relief from stay under § 362(d)(1) because the Lease was assigned to IK/S in violation of its terms.

## CONCLUSION

We AFFIRM the decision of the bankruptcy court.